In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2078

Jerry L. Crabill,

Plaintiff-Appellant,

v.

Trans Union, L.L.C.,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-1024--Michael M. Mihm, Judge.

Submitted November 20, 2000--Decided July 30, 2001


  Before Posner, Easterbrook, and Williams,
Circuit Judges.

  Posner, Circuit Judge.  The Fair Credit
Reporting Act, 15 U.S.C. sec.sec. 1681-
1681t, creates a federal remedy against a
credit reporting agency that fails to
follow "reasonable procedures to assure
maximum possible accuracy" of the
information contained in a consumer's
credit report. sec.sec. 1681e(b), 1681o,
1681n; Henson v. CSC Credit Services, 29
F.3d 280 (7th Cir. 1994). The plaintiff,
Jerry Crabill, appeals from the grant of
summary judgment to the defendant, credit
agency Trans Union.

  Jerry Crabill has a brother whose first
name is John, and the similarity in names
(including first initials) and the fact
that their social security numbers differ
by a single digit (Jerry's ends in 9,
John's in 8) resulted on several
occasions in Trans Union's furnishing a
credit report on John when it had been
requested for information on Jerry's
creditworthiness, in addition to
furnishing the requested report on Jerry.
Denied credit several times, Jerry
complained to Trans Union, which began
adding at the end of its credit reports
on Jerry the notation (in capital
letters): "do not confuse with brother
John D. Crabill."

  Only one creditor who denied credit to

Jerry received a report that mistakenly attributed information about John to Jerry. And he received it not from Trans Union but from a seller of credit reports who, having received separate reports on Jerry and John from Trans Union, mistakenly merged the information in the two reports into a report that it sent the creditor, who on the basis of the inaccurate report decided not to extend credit to Jerry. The inaccuracy cannot be attributed to Trans Union. Other creditors of Jerry, however, who requested a report on him also received from Trans Union John's report unsolicited, albeit with the notation quoted above. The reason is that Trans Union's computer treated requests for a credit report on Jerry as requests for a credit report on John as well. If any of these creditors missed the notation and erroneously supposed that both reports pertained to Jerry, the mistake was the creditor's. It is true that if Trans Union had programmed its computer differently, and as a result had not sent the creditors John's report along with Jerry's when only Jerry's had been requested, they could not have been confused by receiving both reports. But Trans Union defends its program, pointing out that two files with similar though not identical identifying data may actually be referring to the same person, the differences in data being the result of errors in data collection or compilation, and so it was useful for creditors to have both Crabills' files and make their own judgment of whether they were different persons. We think this is right, and that the statutory duty to maintain reasonable procedures to avoid inaccuracy does not require a credit agency to disregard the possibility that similar files refer to the same person.

Neither report contained any inaccurate information, or information that though literally correct was misleading, as in Sepulvado v. CSC Credit Services, Inc., 158 F.3d 890, 895-96 (5th Cir. 1998), or Koropoulos v. Credit Bureau, Inc., 734 F.2d 37, 39-42 (D.C. Cir. 1984). (We have left open the question whether the statutory term "inaccurate" reaches the second type of case. Henson v. CSC Credit Services, supra, 29 F.3d at 285 n. 4.) The ensemble was potentially misleading, however, and may have triggered the

statutory duty to reconsider an individual's credit report if alerted to a potential error. Although Trans Union was entitled to program its computer to select any file whose identifiers closely matched those contained in the creditor's request for information, once it learned from Jerry that the two files indeed referred to different people the statutory duty just mentioned clicked in, cf. id. at 286-87; see also Cushman v. Trans Union Corp., 115 F.3d 220, 224-25 (3d Cir. 1997), and at that point the continued sending of both files to creditors might be viewed as a failure to maintain reasonable procedures for assuring accuracy. The determination of the "reasonableness" of the defendant's procedures, like other questions concerning the application of a legal standard to given facts (notably negligence, a failure to exercise reason able care), is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is beyond question, which it is not in this case.

   Jerry has failed, however, to present evidence that any of the creditors who denied him credit after receiving a report on him and his brother from Trans Union did so because of the report on John. Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of "actual damages," Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996); Casella v. Equifax Credit Information Service, 56 F.3d 469, 473 (2d Cir. 1995); Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160-61 (11th Cir. 1991), which is one of the remedies under the Fair Credit Reporting Act. It does not follow that Jerry cannot obtain any other remedy, such as an injunction. Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333-34 (9th Cir. 1995), noting that the statute does not contain an explicit requirement of establishing injury, suggests that among the other remedies might be attorneys' fees. Jerry is seeking costs and attorneys' fees as well as damages both punitive and compensatory, all of these being statutorily authorized remedies. 15 U.S.C. sec.sec. 1681o, 1681n. He has no

compensatory damages, cannot possibly obtain punitive damages, and is not seeking injunctive relief, but Guimond is authority that he may be entitled to costs and fees anyway.

Cahlin v. General Motors Acceptance Corp., supra, 936 F.2d at 1160-61, however, upheld the grant of summaryjudgment to the defendant for want of a causal connection between the statutory violation and the plaintiff's injury, though so far as appears the plaintiff was seeking only damages. And Hyde v. Hibernia National Bank, 861 F.2d 446, 448-49 (5th Cir. 1988), states that the plaintiff must show injury to obtain a remedy under the Act, though the issue was merely whether the plaintiff could wait to sue until he was injured (the court said he could). These are the only cases under the Fair Credit Reporting Act that address the issue, but cases interpreting the very similar Truth in Lending and Fair Debt Collection Practices Acts, see 15 U.S.C. sec.sec. 1640(a), 1692k(a) (one court has pointed out that the provisions of the three statutes relating to the recovery of attorneys' fees are "virtually identical," Jesus v. Banco Popular de Puerto Rico, 918 F.2d 232, 233 (1st Cir. 1989)), hold that proof of liability without more entitles the plaintiff to an award of costs and attorneys' fees, in the absence of bad conduct by the plaintiff or other unusual circumstances. Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797, 802 (6th Cir. 1996); Graziano v. Harrison, 950 F.2d 107, 113-14 (3d Cir. 1991); Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 28 (2d Cir. 1989); Emanuel v. American Credit Exchange, 870 F.2d 805, 809 (2d Cir. 1989). We have repeated this several times with reference to the Fair Debt Collection Practices Act, Zagorski v. Midwest Billing Services, Inc., 128 F.3d 1164, 1166 and n. 3 (7th Cir. 1997) (per curiam); Mace v. Van Ru Credit Corp., 109 F.3d 338, 345 nn. 3-4 (7th Cir. 1997); Tolentino v. Friedman, 46 F.3d 645, 651-53 (7th Cir. 1995), and although Johnson v. Eaton, 80 F.3d 148 (5th Cir. 1996), reached the opposite result under the Fair Debt Collection Practices Act, we declined in Mace v. Van Ru Credit Corp., supra, 109 F.3d at 345 n. 4, to follow Johnson.

These cases (all but Johnson of course) say that a "successful" action within the meaning of these statutes is merely one that establishes liability. That the plaintiff has no or merely nominal damages is irrelevant. E.g., Mace v. Van Ru Credit Corp., supra, 109 F.3d at 345 n. 3; Zagorski v. Midwest Billing Services, Inc., supra, 128 F.3d at 1166; Purtle v. Eldridge Auto Sales, Inc., supra, 91 F.3d at 802. This is unconventional. But nowhere is it graven in stone that attorneys' fees shall be awarded only to plaintiffs who prove they were injured by the defendant's conduct or can otherwise plausibly claim damages or seek injunctive relief.

What is true is that if no injury is alleged (or, if the allegation is contested, proved, Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)), and as a result there is no case or controversy between the parties within the meaning of Article III of the Constitution, the plaintiff cannot base standing on a claim for attorneys' fees. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 107-08 (1998); Lewis v. Continental Bank, 494 U.S. 472, 480 (1990); Diamond v. Charles, 476 U.S. 54, 70-71 (1986); Rhodes v. Stewart, 488 U.S. 1 (1988) (per curiam); Sanfield, Inc. v. Finlay Fine Jewelry Corp., No. 99-4234, 2001 WL 767150, at *3-*4 (7th Cir. July 10, 2001). Otherwise the limitation of federal jurisdiction to cases and controversies would be empty. But we cannot stop here, despite Crabill's failure to prove injury to himself. Many statutes, notably consumer-protection statutes, authorize the award of damages (called "statutory damages") for violations that cause so little measurable injury that the cost of proving up damages would exceed the damages themselves, making the right to sue nugatory. It is the same theory that underlies the class action, the core function of which is to enable the litigation of claims too small to warrant the costs of prosecuting a separate suit for each claim. The award of statutory damages could also be thought a form of bounty system, and Congress is permitted to create legally enforceable bounty systems for assistance in enforcing federal laws, provided the bounty is a reward for redressing an injury of some sort (though not necessarily an injury to

the bounty hunter); otherwise, as the Court explained in Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771-74 (2000), there would be the bootstrapping problem of the Steel Co. case.

Might the consumer-protection cases that we have cited be interpreted to hold that Congress created a bounty system in the Truth in Lending and Fair Debt Collection Practices Acts and, following Guimond, the Fair Credit Reporting Act, a sister of the FDCPA and cousin of the TILA, as well? On this view, the attorneys' fees are the bounty (or part of the bounty--a qualification that will become clear in the next sentence), their award to the plaintiff who proves a violation being intended to deter future violations and by deterring them to avert injury, just as in an explicit bounty system. This is actually a more persuasive interpretation of the FCRA than of the other two statutes because they authorize statutory damages, see 15 U.S.C. sec. 1640(a)(2)(A) (TILA), sec. 1692k(a)(2)(A) (FDCPA), and the FCRA does not; its only "bounty" is costs and attorneys' fees. The attorney for the plaintiff is made a private attorney general, compensated for bringing suits that while they may not yield a tangible recovery for the client operate to deter violations by imposing a cost on the defendant even if his misconduct imposed no cost on the plaintiff. A number of the cases describe all three statutes in just this way. See Tolentino v. Friedman, supra, 46 F.3d at 651-52 (FDCPA); Begala v. PNC Bank, 163 F.3d 948, 950 (6th Cir. 1998) (TILA); Jesus v. Banco Popular de Puerto Rico, supra, 918 F.2d at 234 (TILA); Rodash v. AIB Mortgage Co., 16 F.3d 1142, 1144 (11th Cir. 1994) (TILA); Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) (FCRA).

There are several problems with this approach, however. One is that attorneys' fees are not really a bounty. They are intended not to reward the plaintiff who brings a successful suit but merely to defray the expense of doing so. Attorneys' fees are--attorneys' fees, and we know from Steel Co. that the prospect of an award of attorneys' fees does not create a justiciable controversy if nothing else is at stake in the litigation. In addition, the Supreme

Court appears to have limited the right to create a bounty system enforceable in federal courts to the situation in which the bounty deters the defendant from inflicting a future injury on the particular plaintiff bringing the suit, Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 185-86 (2000), unless the plaintiff can be viewed as a kind of assignee of the prospective victims, as suggested in Vermont Agency of Natural Resources v. United States ex rel. Stevens, supra. Neither template fits this case or the other consumer-protection cases in which attorneys' fees are sought despite the absence of past or prospective harm to the plaintiff.

Most important, the pertinent judicial landscape has changed with the Supreme Court's decision this past term in Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources, 121 S. Ct. 1835 (2001). Rejecting the "catalyst" theory under which successful plaintiffs receive attorneys' fees for causing defendants to change their behavior even if no judgment was entered, the Court held that attorneys' fees may be awarded only if the plaintiff was "awarded some relief by the court." Id. at 1839. "[A] litigant who left the court emptyhanded" gets no fees. Id. at 1844 (concurring opinion). See also Farrar v. Hobby, 506 U.S. 103, 111 (1992); Hewitt v. Helms, 482 U.S. 755, 760 (1987). That is Jerry Crabill's situation. It is true that Buckhannon did not involve a consumer-protection statute, but rather the civil rights attorneys' fee statute, 42 U.S.C. sec. 1988. But the Court emphasized the similarity of most federal fee-shifting statutes and even equated "prevailing" with "successful" party, 121 S. Ct. at 1839 and nn. 4-5, the former being the term in the civil rights attorneys' fee statute and the latter the term in the Fair Credit Reporting Act. One of the consumer-protection cases that we cited earlier says that "the goal of the fee provision here [i.e., in the Truth in Lending Act] mirrors that of section 1988," Jesus v. Banco Popular de Puerto Rico, supra, 918 F.2d at 234, and the other that "the policies informing . . . [section 1988] apply with equal force to the FCRA," Bryant v. TRW, Inc., supra, 689 F.2d at 80--our statute. We cannot

find anything in the text, structure, or legislative history of the Act to suggest that its attorneys' fee provision has a different meaning from the provision at issue in Buckhannon. Compare Fogerty v. Fantasy, Inc., 510 U.S. 517, 523-25 (1994). Of course, this is not a catalyst case, like Buckhannon. The significance of the Buckhannon decision for our case lies rather in its insistence that a plaintiff must obtain formal judicial relief, and not merely "success," in order to be deemed a prevailing or successful party under any attorneys' fee provision comparable to the civil rights attorneys' fee statute. Buckhannon read with Bryant thus makes clear that Crabill is entitled to no relief at all, not even attorneys' fees. The implications for other consumer-protection statutes remain for consideration in future cases.

Affirmed.