Edward C. ANDERSON, Plaintiff,

v.

TRANS UNION, Defendant.

No. 05–C–91–C.

United States District Court, W.D. Wisconsin.

Dec. 9, 2005.

Briane F. Pagel, Jr., Krekeler Strother, S.C., Madison, WI, for Plaintiff, Edward C. Anderson.

Robert J. Schuckit, Schuckit & Associates, P.C., Indianapolis, IN, for Defendant, Trans Union.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action for monetary relief in which plaintiff Edward C. Anderson contends that defendant Trans Union violated the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b), when it failed to timely investigate disputed information contained in his consumer credit report as required by 15 U.S.C. § 1681i(a). Jurisdiction is present under 28 U.S.C. § 1331.

Before the court are defendant's motion for summary judgment and defendant's motion to strike plaintiff's response brief. I will deny defendant's motion to strike because defendant was not prejudiced when plaintiff filed his responsive brief three days late. However, because plaintiff has failed to provide any evidence from which a reasonable jury could infer that defendant violated the Act and caused plaintiff injury, I will grant defendant's motion for summary judgment.

From the parties' proposed findings, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff Edward C. Anderson is a resident of Verona, Wisconsin. Defendant Trans Union is a consumer reporting agency that prepares consumer credit reports. Defendant regularly receives information from various sources around the country, including banks, credit unions, automobile dealers, student loan providers and others. These sources of individual credit information are known as "furnishers."

Defendant collects information from over 85,000 furnishers relating to more than 200,000,000 consumers. Some of these consumers have the same name and address and similar, though never identical, social security numbers. Whenever possible, defendant attempts to maintain accuracy in the reports it generates by using social security numbers as its primary method of sorting data.

Days or weeks prior to March 4, 2004, plaintiff spoke to a salesman about purchasing a truck. At that time, he learned that his consumer credit report listed as unsatisfied seven civil judgments that had been discharged by his 2002 bankruptcy. The judgments were in favor of Ronald Pagel (2), Jack D. Palmer, ABC Supply Company, Ritter Insurance Agency and AAA Seamless Gutters. Approximately one month later, after plaintiff provided the truck salesman with documents showing that the civil judgments had been discharged in bankruptcy, he was offered a 16.5% interest rate on a vehicle loan. Plaintiff could not afford the financing.

Some time during March 2004, plaintiff called Trans Union. When a consumer calls Trans Union for the first time, the communication generates a number unique to the consumer. Plaintiff's call was assigned the number 125308762. A report generated from the phone call included plaintiff's correct social security number. On March 5, 2004, plaintiff called defendant and spoke with "priority processing representative" Shameek Williams.

On March 19, 2004, defendant received correspondence from plaintiff's attorney, J. David Krekeler, dated March 15, 2004, asserting that the two civil judgments in favor of Ronald Pagel had been discharged. The letter included file-stamped copies of court orders of satisfaction. Because a lawyer had sent the letter, defendant designated the matter as "escalated" and referred it to Williams. Although Krekeler's March 15 letter contained an incorrect social security number for plaintiff, Williams was able to locate plaintiff's

credit information in defendant's files. She did not need to contact any outside party before correcting plaintiff's credit report because Krekeler had provided authenticated documentation of the discharged judgments. Therefore, Williams updated plaintiff's credit record to reflect that both of the Pagel judgments had been discharged in February 2004.

On March 24, 2004, Williams sent plaintiff an updated credit report. Williams included a letter stating that the requested updates had been made, informing plaintiff of his right to add a short statement to his credit report and providing notice of how to request information about defendant's investigation process.

On March 29, 2004, defendant received a second letter from Krekeler, dated March 22, 2004. This letter was processed by priority processing representative Amanda Bompadre. Bompadre had joined defendant's priority processing group on February 21, 2004 and at that time had been trained to handle escalated disputes. In the March 22 letter, Krekeler asserted that five additional civil judgment entries shown on plaintiff's credit report had been satisfied (ABC Supply Company, AAA Seamless Gutters, Ritter Insurance Agency, Jack D. Palmer and American Express) and that three private credit accounts showing an outstanding balance had been satisfied (MBNA, Elan Financial Services and Madison Gas & Electric). (In fact, the Madison Gas & Electric account was a business account that had not been discharged in bankruptcy. Plaintiff does not know why the letter asserted that the account was included in his bankruptcy.) The letter included file-stamped copies of court orders of satisfaction for each of the five disputed civil judgments. Again, however, Krekeler's letter contained an incorrect social security number for plaintiff, differing by three digits from plaintiff's correct social security number.

Defendant's consumer record information system can sort consumer credit reports by name, current address, social security number and date of birth. Before defendant will consider a credit record to "match" a consumer, the consumer's name and address must be provided. In addition, other data must not conflict with the name and address provided. To be considered a match, a social security number must match at least 8 of 9 digits listed in the consumer credit report. If no social security number is provided, defendant may be able to "match" a consumer to his credit report if enough additional information has been provided. However, defendant will not "match" a report to a consumer when the information provided by a consumer generates multiple non-identical credit reports. When consumer information generates multiple non-identical credit reports, defendant sends the consumer a verification letter, seeking additional information.

When defendant receives a letter from a lawyer that provides a correct first name, last name and middle initial, but an incorrect social security number for a consumer, its policy is to try to identify the proper consumer. If it is unable to do so, defendant sends a verification letter to the lawyer.

In order to verify the allegations contained in Krekeler's March 22 letter, defendant needed to contact third party vendors. Because this would require defendant to transfer plaintiff's confidential credit information to these vendors, defendant decided to request verification from Krekeler of plaintiff's correct social security number before proceeding with the corrections Krekeler requested. Therefore, on April 2, 2004, three days after receiving Krekeler's March 22 letter, Bompadre replied to Krekeler, asking him to verify plaintiff's social security

number by mailing defendant a copy of any one of a number of listed documents (including current driver's license, W–2 form, paycheck stub, social security card, letter from the social security administration, state ID card, Medicare or Medicaid card, military ID, bank or credit union statement) in order to protect the accuracy and confidentiality of plaintiff's credit report. Although plaintiff believed his attorney had responded to the letter, the requested information was never mailed to defendant.

Plaintiff runs a business called Integrity Building and Design. His business built three homes in 2003, eight homes in 2004 and one home in 2005. In the summer of 2004, defendant's business applied for membership in the Madison Area Builders Association, hoping to build a $600,000 home for the "Parade of Homes." Plaintiff had built a "parade home" once before and had made additional profits as a result of building the model home.

In August 2004, the builder's association requested and received a copy of plaintiff's credit report. The report listed seven unsatisfied small claims judgments (two from Ronald Pagel, American Express, Jack D. Ritter, ABC Supply Company, Ritter Insurance Agency and AAA Seamless Gutters) that defendant later determined had been discharged at the time the report was generated. Plaintiff's business was denied membership in the builder's association.

On November 1, 2004, defendant received a letter from Krekeler's law firm. The letter acknowledged receipt of defendant's April 2, 2004 verification request letter and asserted that defendant was not permitted to request verification of plaintiff's social security number before processing Krekeler's requests for correction. The letter demanded that within twenty days defendant mail a $250,000 check "payable to Krekeler Strother, S.C. Client Trust Account."

On November 11, 2004, defendant received a letter drafted by Briane Pagel, a lawyer in the Krekeler Strother law firm. The letter bore the typed signature of an individual named Brandon Bay. (Plaintiff acknowledges that this signature was an error.) The letter contained plaintiff's correct social security number, asserted that four judgments against plaintiff had been discharged in bankruptcy (ABC Supply Company, Ritter Insurance Agency, AAA Seamless Gutters and Jack D. Palmer) and disputed the status of three private credit accounts (Anchor Bank, Elan Financial Services and Madison Gas & Electric). Pagel did not dispute the MBNA account referred to in Krekeler's March 22 letter. Pagel asserted that the balance in one private credit account listed on plaintiff's credit report was paid in full and closed (Anchor Bank), that one private credit account had been discharged by bankruptcy (Elan Financial Services), and that another private credit account (Madison Gas & Electric), which Krekeler had asserted was a personal account in the March 22 letter, was actually a business debt.

In response to the letters from Krekeler's firm and from Pagel, defendant investigated the disputed judgments and private credit accounts and transferred plaintiff's confidential credit information to third parties who had furnished the relevant credit information. Defendant completed its investigations on November 16, 2004 and December 1, 2004, and updated plaintiff's credit report to reflect that four civil judgments had been discharged in bankruptcy, one civil judgment had been paid, two private credit accounts (Elan Financial Services and MBA) had been discharged in bankruptcy and one private account had been closed (Anchor Bank). The alleged business account, Madison Gas & Electric, was removed at the creditor's request. After completing its updates, defendant mailed plaintiff an

updated copy of his credit report, and informed him that the requested updates had been made and that he had a right to add a short statement to his credit report and provided notice of how to request information about defendant's investigation process.

On December 2, 2004, defendant sent plaintiff's counsel, Briane Pagel, a letter explaining the prior activity on plaintiff's credit file and denying his request for compensation.

## OPINION

### A. *Motion to Strike*

■ As a preliminary matter, defendant has moved to strike plaintiff's response brief, which was filed three days after the deadline set by the court. Because two of those three days were not business days and because defendant has suffered no prejudice as a result of the minor delay, the motion will be denied. Although this court expects parties to adhere strictly to deadlines, it nonetheless endeavors to avoid the glorification of form over substance.

### B. *Motion for Summary Judgment*

Plaintiff contends that defendant violated the Fair Credit Reporting Act by failing to follow reasonable procedures to insure the accuracy of his credit report as required by 15 U.S.C. § 1681e(b). Congress adopted the Fair Credit Reporting Act in 1970 after finding "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). The purpose of the Act was to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information in a manner [that] is fair and equitable to the consumer, with regard to the confi-

dentiality, accuracy, relevancy and proper utilization of such information." 15 U.S.C. § 1681(b).

■ The parties agree that plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c) and that defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). Therefore, the provisions of the Fair Credit Reporting Act govern defendant's obligations toward plaintiff. Section 1681e(b) imposes a duty upon consumer reporting agencies to "follow reasonable procedures" to assure the maximum possible accuracy of the information contained in an individual's credit report. To prove that defendant violated this provision, plaintiff must establish that: (1) defendant's consumer credit report contained inaccurate information; (2) the inaccurate information resulted from defendant's failure to follow reasonable procedures; (3) plaintiff suffered damages; and (4) the damages were caused by the inaccurate information. *Perry v. Experian Information Solutions, Inc.*, 2005 WL 2861078 at *4 (N.D.Ill. Oct.28, 2005) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir.1996)). Although defendant denies that the information contained in plaintiff's credit report was "inaccurate," it has updated plaintiff's credit report as requested. This suggests that the disputed information was inaccurate before the updates were made. At issue now is whether the procedures used to process plaintiff's disputes were reasonable as a matter of law and whether the inaccurate information injured plaintiff in any way.

### 1. *Reasonableness of defendant's procedures*

On March 15 and March 22, 2004, plaintiff's attorney mailed letters to defendant contesting numerous items contained in plaintiff's credit report. Section 1681i(a)(1)(A) sets forth the time limits

within which a consumer credit reporting agency must act when a consumer disputes information contained in his credit report. The provision states:

> If the completeness or accuracy of any item of information contained in a consumer's file is disputed by the consumer and the consumer notifies the agency directly ... of such a dispute, the agency shall, free of charge, conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from the file ... before the end of the thirty day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

§ 1681i(a)(1)(A). In addition, § 1681i(a)(2)(A) states that

> [b]efore the expiration of the 5 business day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer in accordance with [§ 1681i(a)(1)], the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer.

■ The facts demonstrate that defendant received the letters from plaintiff's attorney, David Krekeler, on March 19 and March 29, 2004. Both letters listed an incorrect social security number for plaintiff. Although defendant undertook a prompt reinvestigation of the disputed items contained in the first letter, it did not do so with respect to the items disputed in the second letter. Instead, within three days of receiving the second letter, defendant replied to plaintiff's attorney, asking him to verify plaintiff's social security number. Because plaintiff's attorney did not provide

defendant with the correct social security number until October 28, 2004, defendant did not reinvestigate plaintiff's disputes within the thirty-day window prescribed in § 1681i(a)(1)(A) and did not notify plaintiff's creditors of his dispute within the five-day window prescribed by § 1681i(a)(2)(A).

Plaintiff argues that defendant's failure to comply with the deadlines set forth in §§ 1681i(a)(1)(A) and 1681i(a)(2)(A) is evidence that defendant's procedures were unreasonable and therefore violated § 1681e(b). Defendant does not deny that it was capable of sorting consumer's credit information by criteria other than social security number and admits that it may have been able to "match" plaintiff with his consumer credit report had his attorney provided no social security number instead of an incorrect social security number. Plaintiff contends that because defendant was capable of accessing plaintiff's credit report using his address, birth date, consumer ID number or even his name, it was unreasonable for defendant to request verification of his social security number before reinvestigating his disputes. However, the deadlines established in §§ 1681i(a)(1)(A) and 1681i(a)(2)(A) are not absolute. Section 1681i(a)(3) states in relevant part:

> (A) Notwithstanding [§ 1681i(a)(1)], a consumer reporting agency may terminate a reinvestigation of information disputed by a consumer under [§ 1681i(a)(1)] if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, *including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information.* [Emphasis added.]
>
> (B) Upon making any determination in accordance with [§ 1681i(a)(3)(A)] that a dispute is frivolous or irrelevant, a

consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination, by mail...

(C) A notice under [§ 1681i(a)(3)(B) ] shall include

(i) the reasons for the determination under [§ 1681i(a)(3)(A) ]; and

(ii) identification of any information required to investigate the disputed information.

It is undisputed that within three days of receiving plaintiff's March 22 letter, defendant sent plaintiff a verification request form, explaining that he had not provided sufficient information to enable defendant to properly match him to his credit report and asking him to send verification of his correct social security number. Although plaintiff emphasizes that defendant could have accessed his credit information without recourse to his social security number, the proper inquiry under § 1681e(b) is not whether defendant *could* have accessed plaintiff's file without confirmation of his social security number, but whether it was *reasonable* for defendant to request the confirmation before investigating plaintiff's dispute.

■ Generally, the reasonableness of a consumer reporting agency's procedures is a factual question for the jury, even when the underlying facts are undisputed. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir.2001). Therefore, summary judgment is appropriate only if the "reasonableness" of defendant's procedures was beyond question. *Id.* In determining whether a procedure was reasonable, the court must consider the circumstances in which the procedure was undertaken. *Perry*, 2005 WL 2861078 at *5; *Philbin*, 101 F.3d at 963 (reasonable procedures are those that reasonably prudent person would employ under circumstances).

It is undisputed that defendant maintains credit records for more than 200,000,-000 consumers, some of whom have the same name, address and similar social security numbers. (It is worth noting that plaintiff's name is Edward Anderson, a name that is hardly uncommon.) The March 22 letter from plaintiff's attorney to defendant challenged seven items contained in plaintiff's consumer credit report and listed a social security number that failed to match plaintiff's social security number by three digits. In order to resolve three of the disputed items, defendant would have had to transmit confidential information (such as plaintiff's social security number) to third party furnishers of the disputed credit information. Given these facts and defendant's duty under §§ 1681(b) and 1681e(b) to follow reasonable procedures to insure both the accuracy *and* confidentiality of plaintiff's credit information, defendant's prompt decision to confirm plaintiff's social security number was both reasonable and prudent. If any unreasonable action was taken in this case, it was the failure of plaintiff's attorney to provide prompt confirmation of plaintiff's social security number. Because plaintiff has failed to provide evidence upon which a reasonable jury could find that defendant's procedures for confirming plaintiff's social security number were unreasonable, defendant's motion for summary judgment will be granted.

### 2. *Damages*

Even if plaintiff had been able to show that a reasonable jury could find defendant's procedures unreasonable, plaintiff would be unable to show that he suffered any injuries as a result of defendant's failure to correct his credit report immediately upon notification of the inaccurate information. In order to prevail in this case, plaintiff is required to show a causal relationship between the defendant's alleged violation of the Fair Credit Reporting Act and harm he has suffered. *Crabill*, 259

F.3d at 664. The parties have devoted much of their attention to whether, under the Fair Credit Reporting Act, plaintiff can recover damages sustained by his business, as opposed to damages he sustained personally. However, it is unnecessary to answer that question because plaintiff has not introduced evidence that he *or* his business suffered any injury as a result of the incorrect information contained in his consumer credit report.

A motion for summary judgment does not invite the court to weigh the evidence or determine the truth of the matters in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment is the moment in a lawsuit when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Schacht v. Wisconsin Dept. of Corrections,* 175 F.3d 497, 504 (7th Cir.1999). To avoid summary judgment, the nonmoving party must "produce more than a scintilla of evidence to support his position." *Pugh v. City of Attica, Indiana,* 259 F.3d 619, 625 (7th Cir.2001).

■ The undisputed facts indicate that plaintiff tried to purchase a vehicle in March 2004. When he discovered that his credit report erroneously listed seven civil judgments against him, he provided the vehicle salesman with court records demonstrating that the judgments had been discharged. Plaintiff was offered a loan, but was unable to afford the 16.5% interest rate offered.

■ Plaintiff was offered his truck loan in March 2004. However, plaintiff did not notify defendant of the erroneous information contained in his credit report until March 19 and 29, 2004. Had plaintiff supplied defendant with all the information needed to confirm his identity and reinvestigation his credit report, defendant would still have had until April 19 and 29, 2004 to make the necessary corrections to plaintiff's credit information. The Fair Credit Reporting Act is not a strict liability statute. *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir.1994). Therefore, defendant was not required to take any action to correct plaintiff's credit report until he provided notice of the alleged error. *Sarver v. Experian Information Solutions,* 390 F.3d 969, 971 (7th Cir.2004). Plaintiff has not averred that he tried to obtain a vehicle loan after defendant had been given notice and opportunity to correct his credit report. Plaintiff has not even averred that he would have received a lower interest rate had his credit report been correct or that he would have been able to purchase the vehicle were it not for the errors in his credit report. Without these allegations, defendant cannot be held liable for plaintiff's inability to obtain an affordable vehicle loan.

■ Plaintiff contends also that the erroneous information in his credit report resulted in his inability to obtain membership in a professional builder's association, which caused him to lose potential sources of income. It is undisputed that plaintiff's business, Integrity Building and Design, applied for membership in a professional builder's association in the summer of 2004, after defendant had been given notice of the alleged errors in plaintiff's credit report. The association requested and received a copy of plaintiff's consumer credit report and, upon receipt of the report, denied plaintiff membership in the association.

On summary judgment, a party must support his position "with something more specific than the bald assertion of the truth of a particular matter." *Hadley v. County of DuPage,* 715 F.2d 1238, 1243 (7th Cir. 1983). He must support his assertions with "affidavits that cite specific concrete facts establishing the truth of the matter

asserted." *Id.* Plaintiff's alleged damage consists of lost profits on a home he hoped to build for the "Parade of Homes." However, plaintiff has introduced no evidence that would permit a reasonable jury to find that the errors in his credit report (as opposed to his bankruptcy or some other factor) were the reason he was denied membership in the association. At his deposition, plaintiff testified that no one at the builder's association ever informed him the erroneous information in his credit report was the reason his membership application was denied or that his application would have been approved absent the misinformation. Anderson Dep., dkt. # 13, at 41. Furthermore, he has not introduced any evidence indicating that he would have been able to build a home for the parade of homes had he been granted membership in the association. Therefore, because plaintiff has provided no evidence of either injury or the unreasonableness of defendant's procedures, I would grant defendant's motion for summary judgment on this ground as well.

### ORDER

IT IS ORDERED that

1. Defendant's motion to strike is DENIED; and

2. Defendant's motion for summary judgment is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.