**Eva M. GREEN, Individually and on behalf of all other similarly situated, Plaintiff,**

v.

**MONARCH RECOVERY MANAGE-MENT, INC. a Pennsylvania corporation, DHC Consulting Services, LLC a Maryland limited liability company, Interim Capital Group, Inc. an Indiana Corporation, Defendants.**

**No. 1:13–cv–00418–SEB–MJD.**

United States District Court, S.D. Indiana, Indianapolis Division.

Feb. 18, 2014.

Angie K. Robertson, Mary E. Philipps, David J. Philipps, Philipps and Phlipps, Ltd., Palos Hills, IL, Steven James Halbert, Carmel, IN, for Plaintiff.

Nicholas Ward Levi, Peter A. Velde, Kightlinger & Gray, Indianapolis, IN, for Defendants.

### ORDER ON MOTION TO COMPEL

MARK J. DINSMORE, United States Magistrate Judge.

This matter is before the Court on Plaintiff Eva Green's Motion to Compel Defendants to Answer Discovery as to Net Worth [Dkt. 63]. A hearing was held telephonically on December 20, 2013 in which the parties appeared by counsel. The Court, being duly advised, **GRANTS** Plaintiff's Motion to Compel.

### I. Background

Plaintiff filed a Complaint on March 13, 2013 against Monarch Recovery Management, Inc. ("Monarch") and DHC Consulting Services, LLC ("DHC") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). [Dkt. 1.] In her initial complaint, Plaintiff

alleged that Monarch and DHC were "debt collectors," as defined by § 1692a of the FDCPA, and that DHC purchased an alleged debt owned by Plaintiff and contracted with Monarch to collect on this debt. [*Id.*] Plaintiff alleged that Monarch sent Plaintiff a collection letter and, by doing so, violated the FDCPA.[1] [*Id.*] The Complaint was amended on May 23, 2013 to allege a class action and to add Interim Capital Group, Inc. ("Interim") as a defendant. Plaintiff alleges that Interim is the true owner of the alleged debt and that DHC placed the debt on behalf of Interim for collection by Monarch. [Dkt. 22.] Plaintiff moved for class certification on May 1, 2013 [Dkt. 14] and filed an amended motion to certify the class on September 3, 2013 [Dkt. 48]. The motion has not yet been ruled upon. In the interim, Plaintiff seeks to do discovery relating to the class; specifically, Plaintiff has moved to compel the Defendants to answer discovery regarding net worth. [Dkt. 63.] After oral argument on the matter, the Court now considers this motion.

## II. *Discussion*

There are two issues governing this motion: (1) is Plaintiff entitled to discovery on net worth, and (2) if so, whose net worth is Plaintiff entitled to discover?

### A. Plaintiff is entitled to discovery regarding net worth.

The FDCPA outlines statutory damages for which debt collectors are liable if they fail to comply with the Act. 15 U.S.C. § 1692k. For an individual, a debt collector would be liable for any actual damage plus "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(1), (a)(2)(A). In the case of a class action, a debt collector is liable for:

(i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

15 U.S.C. § 1692k(a)(2)(B). Liability is imposed on "*any* debt collector who fails to comply with any provision of this subchapter." 15 U.S.C. § 1692k(a) (emphasis added).

Defendants concede that each Defendant is a "debt collector" as defined by the FDCPA. Hearing on Motion to Compel, *Green v. Monarch Recovery Management*, 1:13–cv–00418–SEBMJD (S.D.Ind. Dec. 20, 2013) [hereinafter *"Hearing on Motion to Compel"*]. However, Defendants object to the inquiry on net worth on the basis of relevance, arguing that net worth is not relevant prior to class certification. In support of that argument, Defendants cite to *Marshall v. Bonded Adjustment Co.*, No. CV–11–22–RMP, 2011 WL 3882284 (E.D.Wash. Sept. 2, 2011). Plaintiff argues that the information is relevant because it is "necessary to determine whether and what class should be certified." [Dkt. 63 at 2.] Plaintiff further argues that the FDCPA makes net worth a direct issue for class actions and thus a relevant inquiry of discovery.

██ The cases cited by Plaintiff, along with other case law, persuade the Court that net worth is a relevant area of discovery at this juncture despite the fact that the class has not yet been certified. *See Bode v. Encore Receivable Management Inc.*, No. 05–CV–1013, 2006 WL 801017, at *2 (E.D.Wisc. March 29, 2006) ("[A] party need not have a class certified to justify

---

1. Plaintiff alleges that Defendants were on notice that Plaintiff was represented by counsel as Plaintiff had previously litigated and settled the alleged debt, that the claim was time-barred, and that Defendant DHC was unlicensed. [Dkt. 1.]

the relevance of a request for a defendant to state its net worth in an FDCPA action."); *Evon v. Law Offices of Sidney Mickell,* Civ. No. S–09–0760 JAM GGH, 2010 WL 455476 (E.D.Cal. Feb. 3, 2010) (citing *Sirota v. Solitron Devices Inc.,* 673 F.2d 566, 571 (2nd Cir.1982)) ("A misconception that runs throughout defendants' papers is the belief that discovery can only be obtained that is personal to the named plaintiff's suit. That is not true. The action is styled as a class action. Unless a court orders otherwise, discovery can proceed into class issues."); *Trevino v. ACB American, Inc.,* 232 F.R.D. 612, 615 (N.D.Cal.2006) ("[T]here is no hard and fast rule that discovery relating to class issues is not proper before class certification has been filed or granted."); *Muha v. Encore Receivable Management, Inc.,* 236 F.R.D. 429 (E.D.Wisc.2006) (rejecting defendant's argument that discovery regarding net worth is premature because there has been no finding of liability and no class has been certified).

■ The Court finds that information regarding net worth is helpful in deciding class certification. Courts have determined that such information is relevant in evaluating class superiority. *Bode,* 2006 WL 801017, at *1 ("[I]nformation concerning the defendant's net worth is relevant and potentially useful in determining whether a class action is superior to other methods of adjudication."); *see Barkouras v. Hecker,* Civ. No. 06–0366(AET), 2006 WL 3544585 (D.N.J. Dec. 8, 2006) (using net worth to evaluate superiority of a class); *Mund v. EMCC, Inc.,* 259 F.R.D. 180 (D.Minn.2009) (same); *Kohlenbrener v. Dickinson,* No. 94 C 4696, 1996 WL 131736 (March 15, 1996) (using net worth to deny class certification). Defendants argue that Plaintiff has fully briefed the issue of class certification and therefore that the information is no longer relevant with regard to class certification. However, as demonstrated by Defendants' recent

filing of a response to Plaintiff's amended motion for class certification [Dkt. 73], the issue has not yet been fully briefed. Further, there is nothing to indicate that Plaintiff would not be able to file (or seek leave to file) a second amended motion to certify the class.

The Court also finds that such information is relevant to have meaningful settlement negotiations. *See Esparza v. Randall S. Miller & Assoc., P.C.,* 1:08–cv–05940 (N.D.Ill. March 3, 2009), ECF No. 51 (holding that "[a] class cannot evaluate the reasonableness of any proposed settlement without [knowing a defendant's net worth]").

While the Court is mindful of the ruling in *Marshall* denying discovery on net worth, this case appears to be an anomaly on the issue of relevancy of net worth. That court reasoned that financial information is sensitive, and parties have a strong interest in protecting their financial information. *Marshall,* 2011 WL 3882284. However, Defendants may move for a protective order during the pendency of class certification, thereby protecting any truly sensitive information. *See Perez v. Monarch Recovery Management, Inc.,* 1:13–cv–05694 (N.D.Ill. Nov. 5, 2013), ECF No. 17. In fact, the Defendants in this case have already obtained such a protective order. [Dkt. 62.] Accordingly, the Court finds that net worth is relevant, and Plaintiff is entitled to this discovery.

**B. All Defendants must respond to the discovery for net worth.**

■ Defendants next argue that if Plaintiff is entitled to discovery on net worth, then the discovery should be limited to the net worth of Monarch only. Defendants argue that Monarch is alleged to be the actor who committed the violations and that the Court has already found that Plaintiff is limited to allegations that DHC

and Interim are vicariously liable for Monarch's alleged conduct. Thus, Defendants argue, permitting discovery as to Interim and/or DHC's net worth would expose the one who actually committed the violations to greater liability and potentially cause Monarch to pay more than what is statutorily required of it. Defendants also allege that Plaintiff is trying to "stack" the net worth of all the Defendants to create a greater recovery in an attempt to reach the maximum $500,000, which defeats the purpose of the damages cap. Defendants argue that the intent of Congress was to protect debt collectors from insolvency for FDCPA violations. Plaintiff argues that the Complaint alleges that each Defendant is either directly or indirectly liable and thus each Defendant's net worth is relevant.

First, this Court did not establish that DHC or Interim could only be held to be vicariously liable. The Order Defendants reference, [Dkt. 51], established that Plaintiff has one indivisible injury and is thus only entitled to one award which for which each defendant may be jointly responsible. [Dkt. 51 at 3–4.] This does not mean that each defendant could not be found directly liable for its role in Plaintiff's injury. In other words, Plaintiff could have brought a suit against any of the three defendants individually; instead she brought a suit against all three Defendants.

Second, the Complaint does not allege that either DHC or Interim is vicariously liable for the actions of Monarch, as Defendants argue. The Complaint alleges that all Defendants acted in violating the FDCPA [Dkt. 22], even though the letter was sent by Monarch. As Plaintiff explains, Plaintiff believes that discovery will reveal that DHC and Interim took some action or maintained control over the action taken. *Hearing on Motion to Compel.*

■ Supposing that Plaintiff could only demonstrate vicarious liability as to DHC and/or Interim, based on the pleadings or otherwise, "the FDCPA has utilized the principle of vicarious liability." *Pettit v. Retrieval Masters Creditor Bureau, Inc.,* 211 F.3d 1057, 1059 (7th Cir.2000) (finding that the theory of respondeat superior can apply to an FDCPA claim when the superior is also a "debt collector" under the FDCPA). However, Defendants maintain that under the doctrine of vicarious liability the principal should only be required to pay what its agent would have been required to pay. Defendants (not so subtly) insinuate that Monarch has the lowest net worth of all the defendants and thus raising the cap based on DHC and/or Interim's net worth would expose Monarch to greater liability. Defendants argue that the damages cap was designed to protect companies like Monarch. Defendants' argument is, in part, supported by the Seventh Circuit. *See Sanders v. Jackson,* 209 F.3d 998 (7th Cir.2000). In *Sanders,* the Seventh Circuit determined how to calculate net worth, but did not address whose net worth to use when there are multiple defendants. *Id.* The Seventh Circuit recognized that "the primary purpose of the net worth provision is a protective one ... ensur[ing] that defendants are not forced to liquidate their companies in order to satisfy an award of punitive damages." *Id.* at 1002. The Court also pointed out that "the net worth clause is designed to address a problem often associated with fixed monetary penalties: they sometimes penalize smaller companies too harshly but are insufficiently punitive for larger businesses." *Id.* Thus, while the Court is mindful that the statute is not meant to bankrupt defendants, it also was not meant for larger companies to hide behind smaller ones to avoid larger payouts, or avoid liability altogether if the smaller company has a negative net worth for

which no person in the class could recover. *See Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir.2000) ("[A]n entity that is itself a 'debt collector' ... should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."); *Barkouras,* 2006 WL 3544585, at *3 ("[The damages cap] surely was not intended to [sic] as a loophole for defendants to avoid suits altogether."). To do so would be to completely undermine the punitive aspect of statutory damages. *See Gonzales v. Arrow Financial Services, LLC,* 660 F.3d 1055, 1067 (9th Cir.2011) ("Statutory damages under the FDCPA are intended to 'deter violations by imposing a cost on the defendant even if his misconduct imposed no cost on the plaintiff.'") (quoting *Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 666 (7th Cir.2001)). It would seem appropriate to apply the FDCPA's damages cap individually to each relevant Defendant.

This decision is consistent with other courts that have required all defendants to produce evidence of their net worth. *See, e.g., Perez v. Monarch Recovery Management, Inc.,* 1:13–cv05694 (N.D.Ill. Nov. 5, 2013), ECF No. 17 (ordering all defendants to supply information regarding net worth under seal even though based on one form letter); *Trevino,* 232 F.R.D. 612 (ordering all defendants to comply with discovery for net worth); *Barkouras,* 2006 WL 3544585 (same); *Evon,* 2010 WL 455476 (same); *Kohlenbrener* 1996 WL 131736 (considering all defendants' net worth to determine class superiority). Accordingly, all Defendants are required to answer discovery regarding net worth.

### III. *Conclusion*

For the reasons set forth above, Plaintiff's Motion to Compel [Dkt. 63] is **GRANTED.** Defendants' objections to Plaintiff's Interrogatory No. 10 and Request for Production No. 7 are **overruled,** and Defendants shall fully and unequivo-cally respond to those requests by no later than February 25, 2014 and electronically transmit such responses to counsel for Plaintiff on that date (in the alternative, if the document production is voluminous, Defendants may hand deliver the documents at the beginning of the settlement conference scheduled on February 26, 2014).