*Hong v. Securities and Exchange Commission*

In the

# United States Court of Appeals
## For the Second Circuit

August Term 2021

(Argued: February 15, 2022     Decided: July 21, 2022)

Docket No. 21-529

VICTOR HONG,

*Petitioner*,

–v.–

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,
UNITED STATES OF AMERICA,

*Respondents*.[*]

B e f o r e :

PARKER, CARNEY, and ROBINSON, *Circuit Judges*.

This case presents the question whether a person who submits information about potential securities laws violations to the Securities and Exchange Commission is entitled under Section 21F of the Securities Exchange Act to receive a whistleblower award from the SEC when other federal agencies use that information to help secure a

---

[*] The Clerk of Court is directed to amend the official case caption as set forth above.

financial settlement with the alleged wrongdoer. On review, we agree with the SEC that neither the settlements secured by the other agencies nor any investigative or information-sharing activities undertaken by the SEC with respect to Hong's tip qualifies as a "judicial or administrative action brought by the [SEC]" under Section 21F. 15 U.S.C. § 78u-6. We further decide that the settlements are not "related actions" to any action brought by the SEC. Having so construed the statute, we reject Hong's arguments that he was entitled to an award and that the SEC was obligated to provide him with additional records regarding its investigation into the wrongdoer.

The petition for review is DENIED. The motion to dismiss is DENIED as moot.

———————

PAUL K. BROWN (Richard S. Corenthal, John H. Byington III, *on the brief*), Archer, Byington, Glennon & Levine LLP, Melville, NY, *for Petitioner*.

MATTHEW S. FERGUSON (Michael A. Conley, Thomas J. Karr, *on the brief*), Office of the General Counsel, Securities and Exchange Commission, Washington, DC, *for Respondent Securities and Exchange Commission*.

Casen B. Ross, United States Department of Justice, Washington, DC, *for Respondent United States of America*.

———————

CARNEY, *Circuit Judge*:

On this petition for review, we consider whether an individual who submits information about potentially unlawful conduct to the Securities and Exchange Commission is entitled to an award under the Commission's whistleblower program when the Commission does not itself bring an enforcement action but other federal agencies secure financial settlements in partial reliance on that information. *See* 15 U.S.C. § 78u-6.

Victor Hong worked at a subsidiary of the Royal Bank of Scotland Group PLC ("RBS" or "the Bank") for six weeks in the fall of 2007 before resigning, prompted by

2

what he believed to be unlawful practices engaged in by the Bank in connection with its portfolio of residential mortgage-backed securities ("RMBS"). Seven years later, in 2014, he formally submitted information to the SEC about the Bank's misconduct. The SEC itself took no action against the Bank, but gave the information to the Department of Justice ("DOJ") and the Federal Housing Finance Agency ("FHFA"), each of which had already begun RMBS-related investigations into the Bank. FHFA and DOJ obtained additional related information and documents from Hong by subpoena, and, in 2017 and 2018, respectively, those agencies entered into settlements with the Bank related to its underwriting, marketing, and sale of RMBS. Combined, the settlements required the Bank to make payments to those agencies totaling over $10 billion.

Hong then applied to the SEC for an award under its whistleblower program (the "Program"), established in 2010 by Section 21F of the Securities Exchange Act. *See* 15 U.S.C. § 78u-6.[1] He asserted that the DOJ and FHFA settlements constituted "covered judicial or administrative action[s]" or "related action[s]" resulting in sanctions of over $1 million and that he was therefore entitled under the Program to receive between 10% and 30% of the total amounts collected. *See id.* § 78u-6(a)(1), (b)(1). The SEC denied his claim. It concluded that Hong had identified no action "brought by the Commission under the securities laws" based on his information, as required to qualify as a "covered judicial or administrative action" on which an award might be due; it further found that there was in fact no such action "brought by the Commission." Sp. App'x at 5–6 (quoting 15 U.S.C. § 7u-6(b)(1)). It also rejected his alternative theory of recovery that the DOJ and FHFA settlements qualified as "related actions" under the Program and

---

[1] We note that Section 21F of the Exchange Act is codified in its entirety at 15 U.S.C. § 78u-6. The lettered subsections of Section 21F each correspond directly to the codified subsections of 15 U.S.C. § 78u-6(a)-(j). For ease of reading, we refer in the text to Section 21F and its subsections, providing the statutory citations as needed.

3

made him eligible for an award. The Commission reasoned that an "action" that was "brought by the SEC" was still a necessary predicate for an action brought by *another* agency to qualify as a "related action." *Id.* at 7. Hong then petitioned for judicial review. *See* 15 U.S.C. § 78u-6(f).

On review, we locate no error in the SEC's construction of Section 21F to require an action "brought by the Commission" to support a whistleblower award. We further decide that, contrary to Hong's arguments, investigative and information-sharing activities engaged in by the SEC are not "covered judicial or administrative action[s] brought by the Commission under the securities laws" or "actions" as to which the DOJ and FHFA settlements can be considered "related." Hong's argument that this reading is impermissibly inconsistent with the congressional intent in establishing the whistleblower program cannot overcome the plain language of Section 21F and does not give us license to disregard the agency's reasonable application of the statutory provisions.

Finally, having so concluded, we adopt the Commission's determination that Hong was not entitled to an award under the Program because the Commission did not bring a covered action. We also reject Hong's contention that the SEC was obligated to provide him with additional records regarding its investigation in connection with its denial of the claimed award. He has identified no regulatory or statutory basis for his request and, in any event, in light of our construction of the statute, any such records would not entitle Hong to an award.

We therefore **DENY** the petition for review. We further **DENY** as moot the motion to dismiss filed by the United States as respondent.

4

**BACKGROUND**

## I.  Statutory Background

Through the Dodd-Frank Wall Street Reform and Consumer Protection Act ("the Dodd-Frank Act"), Pub. L. No. 111-203, 124 Stat. 1376 (2010), Congress adopted a range of new whistleblower incentives and protections as well as many other measures aimed at stemming abuses in the financial arena. The whistleblower provisions in particular were designed to motivate those with inside knowledge of securities law violations to share information with the government despite the risks that speaking out could pose to the whistleblower's professional reputation and career. *See* S. Rep. No. 111-176, at 110–11 (2010). As relevant here, the Dodd-Frank Act amended the Securities Exchange Act of 1934 (the "Exchange Act") to establish a new statutory whistleblower program within the Commission. *See* Pub. L. No. 111-203, § 922, 124 Stat. 1376, 1841–49 (2010); *see generally Kilgour v. U.S. Sec. & Exch. Comm'n*, 942 F.3d 113, 120–21 (2d Cir. 2019).

The Program provides that the SEC "shall pay" monetary awards to individuals who provide the SEC with "original information" pertaining to securities laws violations and resulting in sanctions payments if certain conditions are met. 15 U.S.C. § 78u-6(b)(1). Thus, the statute directs in relevant part:

> In any *covered judicial or administrative action, or related action*, the Commission, under regulations prescribed by the Commission . . . , shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement of *the covered judicial or administrative action, or related action*, in an aggregate amount equal to . . . not less than 10 percent . . . [and] not more than 30 percent, in total, of what has been collected of the monetary sanction imposed in the action or related actions.

*Id.* (emphasis added).[2] A whistleblower's eligibility for an award under the program accordingly depends in part on whether the information provided led to the successful enforcement of a "covered judicial or administrative action" or "related action."

Section 21F(a)(1) defines "covered judicial or administrative action" as "any judicial or administrative action brought by the Commission under the securities laws that results in monetary sanctions exceeding $1,000,000." *Id.* § 78u-6(a)(1). It defines a "related action," as, "when used with respect to any judicial or administrative action brought by the Commission under the securities laws, . . . any judicial or administrative action brought by [certain other entities]" that "is based upon the original information provided by a whistleblower . . . that led to the successful enforcement of the Commission action."[3] *Id.* § 78u-6(a)(5). The Department of Justice is among the entities

---

[2] The determination of the amount of such an award is committed to the Commission's discretion. 15 U.S.C. § 78u-6(c)(1)(A). Awards are paid from a special fund created by Congress for this purpose. *Id.* § 78u-6(b)(2); *see id.* § 78u-6(a)(2) (defining "Fund" as "Securities and Exchange Commission Investor Protection Fund"); *see id.* § 78u-6(g) (establishing Fund).

[3] For easier reference, we set out the relevant text of Section 21F(a)(1) and (5) here in full:

> **(1) Covered judicial or administrative action**
>
> The term "covered judicial or administrative action" means any judicial or administrative action brought by the Commission under the securities laws that results in monetary sanctions exceeding $1,000,000. . . .
>
> **(5) Related action**
>
> The term "related action", when used with respect to any judicial or administrative action brought by the Commission under the securities laws, means any judicial or administrative action brought by an entity described in subclauses (I) through (IV) of subsection (h)(2)(D)(i) that is based upon the original information provided by a whistleblower pursuant to subsection (a) that led to the successful enforcement of the Commission action.

15 U.S.C. § 78u-6(a)(1), (5).

whose judicial or administrative actions may qualify as "related" for purposes of the Program. *Id.* § 78u-6(a)(5), (h)(2)(D)(i)(I). The Program also confers substantial discretion on the Commission in administering the Program, instructing that "[a]ny determination made under [Section 21F], including whether, to whom, or in what amount to make awards, shall be in the discretion of the Commission." *Id.* § 78u-6(f).

## II. Factual Background[4]

### A. Hong's employment at RBS Greenwich

In September 2007, Hong began work as a managing director and head of fixed-income independent price verification and risk management at RBS Greenwich Capital Markets, Inc., a subsidiary of RBS. In this position, he was responsible for conducting independent price verifications for all of the Bank's securitized credit products, including prime RMBS.[5] Shortly after beginning work, Hong asserts, he became aware of "persistent discrepancies between trader marks or otherwise over-marked valuations" and the "analytical fair market value" of these securitized products. Jt. App'x at 153. According to Hong, his supervisors and RBS senior management repeatedly refused to correct these discrepancies, leading him to resign from RBS Greenwich in November 2007, less than two months after he began.

---

[4] The facts as set forth here are largely undisputed by the parties and are drawn from the administrative record.

[5] As we have explained elsewhere, "RMBS are asset-backed financial instruments supported by residential mortgage loans." *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 100 (2d Cir. 2017). "Typically, an entity (such as a bank) will buy up a large number of mortgages from other banks, assemble those mortgages into pools, securitize the pools (i.e., split them into shares that can be sold off), and then sell them, usually as bonds, to banks or other investors." *United States v. Litvak*, 808 F.3d 160, 166 n.3 (2d Cir. 2015) (internal quotation marks omitted).

**B.** Hong's tips to the SEC and the investigations into RBS

In July 2014, seven years after his departure from RBS, Hong completed and filed with the Commission a Tip, Complaint or Referral ("TCR") form providing information about the possible securities law violations of which he became aware while working at the Bank. He reported, for example, that "RBS Greenwich Capital top officers asked [him] to help falsify the pricing of several billion dollars of RMBS . . . and other mortgage-related trading portfolios," and stated that he had "resigned rather than cooperate." Jt. App'x at 6.[6]

The information provided on his July 2014 TCR form was apparently of interest to members of a working group (the "RMBS Group") drawn from the government's Financial Fraud Enforcement Task Force, an entity established by President Obama in 2009 to investigate RMBS-related misconduct and comprising representatives of the SEC, FHFA, DOJ, and other agencies.[7] In 2011, FHFA had sued the Bank on the basis of allegedly false and misleading statements related to its sale of RMBS to Fannie Mae and Freddie Mac. *See Fed. Hous. Fin. Agency v. Royal Bank of Scotland Grp. PLC*, No. 11-cv-1383 (D. Conn. filed Sept. 2, 2011). In the same timeframe, DOJ initiated an investigation into the Bank's "marketing, structuring, sponsorship, arrangement, underwriting, issuance, and sale" of RMBS. Jt. App'x at 762; *see id.* at 95. The information provided by

---

[6] Hong filed several TCR Forms. In his July 2014 submission, Hong wrote that he had spoken about his concerns in 2007 with representatives of DOJ, the SEC, and the Federal Bureau of Investigation. In the form, he did not explain how he came into contact with these agencies or state whether he had made any formal submission to them at that time.

[7] *See* Exec. Order No. 13519, 74 Fed. Reg. 60,123 (Nov. 17, 2009). The Task Force membership consisted of senior officials from over 20 governmental entities. It was dissolved in 2018. *See* Exec. Order No. 13844, 83 Fed. Reg. 33,115 (July 11, 2018).

8

Hong on the July 2014 TCR form signaled that he had information potentially relevant to these agencies' investigations.

SEC officials did not contact Hong about the information provided on his July 2014 TCR form. Instead, in November 2014, a special agent with the FHFA Office of Inspector General contacted him and explained that FHFA planned to follow up in coordination with the U.S. Attorney's Office for the District of Massachusetts. In December, after consulting with Hong's attorney, an assistant U.S. attorney from that district scheduled a meeting with Hong for later that month and issued a subpoena seeking documents from him related to, among other things, the Bank and its RMBS business, including documents he had earlier produced to the SEC and DOJ in connection with ongoing investigations into RBS Greenwich Capital.

The December meeting with Hong was attended by several assistant U.S. attorneys and the FHFA special agent. There and after the meeting, in response to the "consensual" subpoena, Petitioner's Br. at 6, Hong provided what he describes as "troves of documents and further information" related to his allegations of misconduct, Jt. App'x at 159. Soon after, acting on the advice of an assistant U.S. attorney, Hong filed an amended TCR form with the SEC, making note of his extensive document production to DOJ.

C.    The DOJ and FHFA settlements

In 2017, FHFA settled its lawsuit against the Bank for $5.5 billion. *See* Stipulation of Dismissal, *Fed. Hous. Fin. Agency*, No. 11-cv-1383 (D. Conn. Aug. 3, 2017), ECF No. 741; FHFA-RBS Settlement Agreement (July 12, 2017), https://www.fhfa.gov/Media/PublicAffairs/PublicAffairsDocuments/FHFA-RBS-Settlement-Agreement.pdf. The following year, in 2018, DOJ announced its own $4.9 billion settlement agreement with the Bank. *See* Jt. App'x at 763. As explained in that

agreement, the DOJ settlement arose out of the Bank's conduct in which it "underwrote RMBS backed by home mortgages with a high risk of default, and then made false and misleading representations to sell those RMBS to investors." DOJ-RBS Settlement Agreement, Annex 1 (Aug. 14, 2018), https://www.justice.gov/opa/press-release/file/1087151/download. Hong asserts that, through his two TCR forms and the subpoenaed documents that he produced, he "produced significant evidence" to DOJ and FHFA relating to the Bank's misconduct, helping lead to settlement. Jt. App'x at 159. The evidence he provided included documents and information regarding certain specific loans and RMBS securitizations that were identified in the DOJ agreement as among the predicates for that settlement.[8] *See* Petitioner's Br. at 7.

### III. Procedural History

In 2015 and 2016, before those two settlements, Hong applied to the SEC for a whistleblower award. *See* 17 C.F.R. §§ 240.21F-10(b), 240.21F-11(b) (describing application process). The agency's blank claim form, WB-APP, requests details regarding the applicant's tip or complaint; an explanation of the basis for the applicant's claim of entitlement to an award; and identification of the relevant "Notice of Covered Action"—a notice that the SEC is required to publish on its website when "a Commission action results in monetary sanctions totaling more than $1,000,000." *Id.* § 240.21F-10(a). The Commission's Office of the Whistleblower (the "Office") found Hong's two applications deficient for their failure to identify a covered action brought by the Commission, and it advised Hong that the applications "could not be processed

---

[8] For example, Hong explains that he provided documents to DOJ regarding the underlying loans and securitizations constituting various "Soundview" RMBS products during the relevant period. Petitioner's Br. at 7–8. The DOJ settlement covers the Bank's underwriting and other activities related to 77 of these Soundview RMBS products. *See* Jt. App'x at 763 (defining "Covered Conduct"); *id.* at 782 (listing Soundview RMBS).

further." Jt. App'x at 46.

In 2019, Hong submitted a third application for an award, and, in the section of the form that called for information regarding the "Notice of Covered Action," Hong listed the "Royal Bank of Scotland/DoJ Settlement" dated August 14, 2018. *Id.* at 48. The SEC did not publish a notice of covered action related to the DOJ or FHFA settlements, and Hong left the notice number and case number fields of the application form blank. *Id.* In his written explanation on the form regarding the basis for his entitlement to an award, Hong referred to the subpoena under which he provided documents to DOJ in the District of Massachusetts, the FHFA settlement, and the DOJ settlement, the latter two of which he appears to have meant to describe as qualifying "related action[s]." *Id.* at 49. Once again, in response, the Office wrote to Hong that his application "was deficient and could not be processed further because it did not identify a Covered Action brought by the Commission." *Id.* at 46.

Hong then petitioned this Court for review, challenging the adequacy of the response and complaining that the Office had not issued a preliminary determination allowing or denying his claim—a necessary prerequisite to a final agency ruling that he could then challenge in court. *See* 17 C.F.R. §§ 240.21F-10(d), 240.21F-11(d); Pet. for Review, *Hong v. U.S. Sec. and Exch. Comm'n*, No. 19-3886 (2d Cir. Nov. 15, 2019), ECF No. 1.[9] In a motion to supplement the administrative record and for "supplemental discovery," he also sought to force the SEC to provide documents and information regarding its processing of his TCR forms, its referral of the TCR information to FHFA

[9] Section 21F of the Exchange Act expressly incorporates into its procedures the provisions of Section 706 of the Administrative Procedure Act—under which a federal court "review[s]" the agency action challenged in the petitioner's filing. 5 U.S.C. § 706. The relevant subsection of Section 21F is entitled "Appeals," however. *See* 15 U.S.C. § 78u-6(f). In accordance with the parties' usage here and with standard practice, we refer to Hong's present challenge as his "petition for review" and to Hong as "petitioner," rather than "appellant."

and DOJ, and communications among the agencies and other entities regarding the RBS investigations. Motion to Suppl. Record at 12–15, *Hong*, No. 19-3886 (2d Cir. Feb. 10, 2020), ECF No. 50. The Commission then sought, and we granted, a remand to permit the Office to issue a preliminary determination on Hong's claim and the Commission then to issue a final determination. Motion to Remand at 2, *Hong*, No. 19-3886 (2d Cir. Feb. 20, 2020), ECF No. 62 (citing Fed. R. App. P. 27).[10]

On remand, the Office issued a preliminary determination recommending denial of an award on the ground, stated earlier, that Hong failed to identify a covered action or a "related action." Jt. App'x at 83. After requesting and receiving the materials that, according to the Office's staff, formed the basis of its recommendation, Hong contested the recommendation and sought a favorable final determination from the Commission. In an eight-page written decision, the Commission denied Hong's claim. It agreed with the Office's preliminary conclusions that the actions identified by Hong—the FHFA and DOJ settlements—were not actions "brought by the Commission under the securities laws" as required to qualify as "covered judicial or administrative action[s]" under Section 21F. Sp. App'x at 5–6. It further ruled that "[a] Related Action cannot be a basis for an award absent a Covered Action": that is, absent a qualifying "action" that was "brought by the Commission," there could be no "Related Action." *Id.* at 7. The Commission also rejected Hong's argument that the agency should have produced to him all documents and information in its possession regarding its referral of the information in his TCR form to DOJ and FHFA. The record was clear, it wrote, that

---

[10] Our order was "based on the SEC's representation that it will, in good faith, proceed to issuance of preliminary and final determinations on Petitioner's application and address his arguments regarding the record and its rejection of his application." Motion Order, *Hong*, No. 19-3886 (2d Cir. May 12, 2020), ECF No. 92. As discussed below, in connection with his continuing quest for agency documents, Hong now contests the agency's assertion that it complied with that directive and understanding. *See infra* at 26.

12

Hong had not identified any action "brought by the Commission within the statutory definition of a Covered Action," *id.* at 10–11, and so no further factual development would affect its treatment of Hong's claim.

Hong again petitioned for review,[11] and we now consider his challenges to the Commission's decision.

## DISCUSSION

As provided in Section 21F(f) of the Exchange Act, we review a Commission determination denying a whistleblower award under the standards set forth in Section 706 of the Administrative Procedure Act ("APA"). 15 U.S.C. § 78u-6(f). Section 706 provides in relevant part that the court shall "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Kilgour*, 942 F.3d at 120. As mentioned above, Section 21F(f) further provides that "[a]ny determination made under this section, including whether, to whom, or in what amount to make awards, shall be in the discretion of the Commission," reenforcing an apparent congressional desire to afford latitude to the Commission in its determinations under the statutory program. 15 U.S.C. § 78u-6(f).

---

[11] In addition to the SEC, Hong named the United States and DOJ as respondents to this petition. *See* Pet. for Review (Mar. 3, 2021), ECF No. 1. Both of the latter moved to dismiss the petition insofar as it named them. *See* Motion to Dismiss (May 12, 2021), ECF No. 44. A motions panel of this Court dismissed the petition as to DOJ, a result that Hong had not opposed. It referred the contested motion to dismiss the United States to this panel for resolution. *See* Order (Dec. 6, 2021), ECF No. 97. Because we deny Hong's petition for review on the merits, we deny the United States' motion to dismiss as moot.

When evaluating an APA challenge to "an agency's interpretation of a statute that it administers," we apply the two-step *Chevron* framework.[12] *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Env't Prot. Agency*, 846 F.3d 492, 507 (2d Cir. 2017). "At *Chevron* Step One, we ask 'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Id.* (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). If the statute is ambiguous, we proceed to *Chevron* step two and determine whether the agency's interpretation is based on a permissible construction of the statute. *See Nat. Res. Def. Council, Inc. v. U.S. Env't Prot. Agency*, 961 F.3d 160, 169 (2d Cir. 2020). We must accord deference to the agency's interpretation of the statute so long as that interpretation is reasonable, even if it is "not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009) (emphasis in original); *see Catskill*, 846 F.3d at 520.

---

[12] In his brief, Hong urges that *Chevron* analysis does not apply unless the agency acted pursuant to rulemaking authority delegated by Congress. He does not argue, however, that the SEC was *not* acting under its rulemaking authority when interpreting the statute, and in fact Section 21F expressly delegates authority to the SEC to promulgate rules and regulations to implement the Program. *See* 15 U.S.C. § 78u-6(j). We therefore use the *Chevron* framework to address the statutory interpretation questions presented here. Additionally, although Hong frames his challenge in terms of the "arbitrary" or "capricious" standard, we understand him to be arguing that the SEC misinterpreted the statute, not that either the SEC's determination or regulations are "procedurally defective as a result of flaws in the agency's decisionmaking process" under the standards set forth in *Motor Vehicle Manufacturers Association of the U.S., Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983). *Catskill*, 846 F.3d at 521–23. We therefore proceed to consider the statutory language and, to the extent that language may be considered ambiguous, the reasonableness of the Commission's interpretation of it in its development of the Program. We then consider whether the agency's *application* of the statute and regulations to Hong's request was arbitrary or capricious.

Hong's eligibility for a whistleblower award turns on whether the information he provided to the SEC led to the successful enforcement of a "covered judicial or administrative action"—that is, an "action" of some kind that was "brought by the Commission under the securities laws"—or a "related action." 15 U.S.C. § 78u-6(a)(1), (b)(1). The agency does not dispute Hong's assertion that the information he provided to the Commission in his TCR form contributed in some way to the settlements that DOJ and FHFA reached with RBS; indeed, we observe that the DOJ settlement refers expressly to a set of the Bank's RMBS products as to which Hong provided details. Hong, for his part, does not meaningfully dispute that, to establish award eligibility, he needs to demonstrate that the Commission "brought" some qualifying action. Meanwhile, the record is plain that the Commission did not sue the Bank, formally initiate an enforcement proceeding against it, or enter into a settlement with it, and Hong cannot contend otherwise.

Accordingly, our task is to determine whether the Commission's interpretation of the statutory language "covered judicial or administrative action brought by the Commission" and "related action" was inconsistent with congressional intent. We determine it was not. We then consider whether the Commission acted in a manner that was arbitrary, capricious, or otherwise not in accordance with law by determining that FHFA or DOJ settlements were neither covered nor related actions. After due consideration, we conclude that the Commission did not and that Hong was therefore not entitled to the award from the Commission that he claimed.

## I.     Meaning of "Covered Judicial or Administrative Action"

Hong contends that the SEC's interpretation of the phrase "covered judicial or administrative action," which is defined in Section 21F(a)(1), is incorrect and that the phrase should encompass the Commission's conduct in sharing the TCR form with DOJ

and FHFA to aid their preexisting investigations. The Commission's interpretation, he says, runs counter to its acknowledgment in a 2018 proposed rulemaking that an "action" need not take the form of a filed lawsuit and should be understood to encompass deferred-prosecution and non-prosecution agreements before which no formal legal or administrative proceeding was initiated. *See* Whistleblower Program Rules, 83 Fed. Reg. 34,702, 34,705 (July 20, 2018). Hong contends that Congress's intent to strongly encourage whistleblower awards supports his expansive reading and renders the agency's parsimonious denial of his application unreasonable and not in accordance with law. Hong's arguments fall short of the mark.

To examine them, we conduct a *Chevron* analysis as to two interrelated elements of the statutory definition of a "covered . . . action": first, the phrase "judicial or administrative action," and second, the phrase "brought by the Commission."

A. "Judicial or administrative action"

As previewed, Hong suggests that the term "action" must be interpreted to encompass the investigative activities undertaken by the SEC in response to the tips it receives. These would include, Hong argues, its "referrals, coordination, and evidence-sharing" with other agencies. Petitioner's Br. at 28–29. He reasons that to conclude otherwise would be inconsistent with the incentivizing purpose of the Dodd-Frank Act's whistleblower provisions and would fail to acknowledge the SEC's effective concession, in its 2018 regulation applying Section 21F, that a successful "action" need not be a formal proceeding to be covered by the Program. The SEC counters that mere investigative activities undertaken by the SEC are "far removed from a judicial or administrative action," and that in any event its broadening of "action" to include settlement agreements entered into by the SEC outside of a formal proceeding does not compel it to adopt the far more expansive interpretation urged on us by Hong. Respondent's Br. at 35–36.

16

*1. Whether the statutory language is ambiguous*

We first conclude, at *Chevron* step one, that Congress did not unambiguously express an intent that the phrase "judicial or administrative action" in Section 21F encompass all manner of investigative "actions" engaged in by the SEC and somehow connected to a financial settlement achieved by a government agency. Nor, by using the term "action," did it unambiguously require that the Commission have initiated a formal judicial or administrative proceeding before it could pay an award.

"Every exercise in statutory construction must begin with the words of the text." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003). Hong may well be correct that "action" has an expansive meaning in many contexts. The word is often used as a synonym for "act" or "conduct." *See Action*, Black's Law Dictionary (11th ed. 2019); *Action*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/action. But "[t]he plain meaning [of a statute] does not turn solely on dictionary definitions of the statute's component words"; it also depends on "the specific context in which that language is used, and the broader context of the statute as a whole." *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016) (internal quotation marks and brackets omitted).

We agree with the SEC that Hong's proposed reading of the term "action" is incompatible with the rest of the statutory definition, and at the very least is not mandated by the statute's plain language. Activities like evidence-sharing and interagency coordination are "actions" in a generic sense, to be sure, but it would be unusual and inappropriate in the Program's statutory setting to refer to them as "judicial or administrative actions brought . . . under the securities laws." In the phrase "to bring an action," the verb "to bring" is more commonly paired with a limited definition of "action"—one that refers to some form of legal process initiated to seek a remedy. *See Action*, Black's Law Dictionary (listing numerous uses of the word "action"

as a synonym for a legal proceeding); *Action*, Oxford English Dictionary, https://www.oed.com/view/Entry/1938 (defining "action" as "[t]he taking of legal steps to establish a claim or obtain judicial remedy"). For instance, courts commonly refer to a party as having "brought an action," meaning that the party filed a lawsuit or formally initiated an administrative proceeding. *See Gabelli v. Sec. and Exch. Comm'n*, 568 U.S. 442, 446 (2013) (stating that "the SEC brought a civil enforcement action" in district court); *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 192 (2d Cir. 1998) (explaining that "the SEC has brought administrative actions for fraud," and alternatively referring to such actions as "administrative proceedings").

That this more focused reading of "action" fits better within the relevant text of Section 21F is bolstered by the text's qualification that, to trigger a possible whistleblower award, the action must be "judicial or administrative" in nature and brought "under the securities laws." 15 U.S.C. § 78u-6(a)(1). Further, the text leaves no doubt that the covered "action" itself must "result[] in monetary sanctions" and be amenable to "enforcement." *Id.* § 78u-6(a)(1), (b)(1). Although the SEC's involvement in an investigation and its referrals to other agencies may facilitate judgments or settlements achieved by those agencies, any such actions by the SEC are not amenable to "enforcement" to obtain a monetary sanction, unlike the judgments or settlements themselves. We thus decline to conclude that the phrase "judicial or administrative action" can be construed *only* to have the sweeping meaning that Hong ascribes to it.

Hong asserts more generally that Congress's purposes in adopting the whistleblower award provisions leave no doubt that the SEC's investigatory activities qualify as "judicial or administrative actions" that were "brought by" it. In his view, Congress's intent to ensure predictability in the whistleblower program to incentivize individuals in possession of valuable information to come forward to the SEC, often at significant risk to their own careers, would be undermined by adopting the agency's

position that its referral of information to other agencies was not an "action" that it "brought." That this was Congress's general purpose in enacting the statute, however, does not mean that the Commission must give the phrase "judicial or administrative action" its broadest possible construction. As the Supreme Court has explained, "no law pursues its purpose at all costs." *Rapanos v. United States*, 547 U.S. 715, 752 (2006). Congress itself built in specific conditions to a whistleblower's eligibility for an award under the Program, including the requirements that a "judicial or administrative action" be brought by the SEC "under the securities laws" and that the minimum recovery be $1 million. It carried these over, too, as a prerequisite for an award based on a "related action." The statute thus expressly contemplates that the SEC's obligation to pay an award is limited to situations in which the SEC *itself* takes certain enforcement steps. We therefore conclude that the broad goals underlying the Dodd-Frank Act's whistleblower provisions do not compel the agency to conclude that the term "judicial or administrative action" extends to the full range of investigative or information-sharing activities that it may undertake with respect to a tip.

In our view, while the term is not entirely free of ambiguity, the contextual clues described above strongly support the SEC's position that Congress intended the term "judicial or administrative action" to refer to judicial or administrative proceedings or an enforcement action that leads to a settlement, whether pre- or post-litigation, by the Commission.

### 2. *Whether the SEC's interpretation is reasonable*

We need not conclusively determine whether the statutory definition unambiguously refers only to judicial or administrative proceedings, however, because the Commission has reasonably interpreted the provision in its regulations and its interpretation is entitled to deference under *Chevron* step two, as well as under the deference directed by Section 21F(f). *See* 15 U.S.C. § 78u-6(f). The regulation initially

promulgated by the Commission to apply Section 21F(a)(1), interpreting "covered judicial or administrative action," provided that "[a]n action generally means a single captioned judicial or administrative proceeding brought by the Commission," as well as, in certain circumstances, multiple proceedings brought by the SEC "aris[ing] out of the same nucleus of operative facts." 17 C.F.R. § 240.21F-4(d)(1)–(2) (2011).[13] As explained above, interpreting the term "action" to mean "proceeding" is a permissible construction of the statutory definition that comports with the most natural reading of the text. *See Catskill*, 846 F.3d at 507.

That the SEC subsequently amended its regulation to extend the definition of "administrative action" to cover certain non-prosecution, deferred-prosecution, and settlement agreements, *see* 17 C.F.R. § 240.21F-4(d)(3) (2020), does not require us to alter our conclusion, contrary to what Hong urges. The SEC's expansion of this definition to reach beyond formal judicial or administrative proceedings does not compel further expansion to include an investigative referral. In support of his different view, Hong seizes on the SEC's comment during the rulemaking process that "Congress did not intend for meritorious whistleblowers to be denied awards simply because of the procedural vehicle that the Commission (or the other authority) has selected to pursue an enforcement matter." 83 Fed. Reg. at 34,705. For present purposes, we may assume without deciding that settlement agreements secured by the Commission outside of the context of pending judicial or administrative proceedings may reasonably be viewed as constituting "judicial or administrative action[s]" because, like settlements and

---

[13] We rely on the version of the regulation in effect when Hong applied for a whistleblower award and the SEC rendered its preliminary determination. As Hong points out and as we discuss in the text, it has since been amended and now speaks directly to settlements achieved through non-prosecution agreements, among other pre-litigation devices. *See* 17 C.F.R. § 240.21F-4(d) (2020).

judgments procured through a proceeding, they enable the agency to enforce the securities laws and obtain a judicially enforceable monetary penalty.

Even so, Hong is incorrect that, having adopted this broader view of the term "action," the Commission then had to include under the umbrella of "action" those investigative activities that contributed to a settlement agreement ultimately achieved by an agency other than the SEC. A settlement agreement achieved by an agency is a "resolution to a law-enforcement investigation" brought by it, entailing "significant remedial and compliance commitments" and directly resulting in "monetary remedies for past violations." *Id.* at 34,705–06. Such an agreement reflects a significantly deeper commitment than do the myriad other acts undertaken incidentally by an agency in its investigative capacity, which share few of the characteristics exhibited by a resolved judicial or administrative proceeding. As the SEC suggests, interpreting "action" to extend even further than settlement agreements would risk blurring the line between actions brought by the SEC and those brought by another agency, disrupting the statute's distinction between "covered" and "related" actions and its focus on the SEC's enforcement activities "under the securities laws." It was therefore reasonable for the SEC to interpret "judicial or administrative action" to refer in general to judicial or administrative proceedings and to limited other categories of actions that share substantial similarities with those proceedings.

Hong insists, still, that the agency's interpretation is impermissible in light of Congress's intent in creating the whistleblower program to provide robust incentives for individuals to come forward with information about financial wrongdoing that affects markets and the stability of our financial system. But even if we were to agree that Hong's broader interpretation offers a better fit with the overall remedial purpose of the statute, his arguments do not make the SEC's interpretation unreasonable. *Cf. Catskill*, 846 F.3d at 520 (concluding that "[a]lthough the Rule may or may not be the

21

best or most faithful interpretation of the Act in light of its paramount goal of restoring and protecting the quality of U.S. waters, it is supported by several valid arguments" and is thus reasonable). The SEC's interpretation reasonably seeks to accommodate the varying procedural routes that agencies may follow to impose a monetary sanction on a scofflaw while complying with Congress's explicit requirement that a "covered judicial or administrative action" brought by the Commission exist before an award may be paid. Hong's arguments thus fail to persuade us.

B.     "Brought by the Commission"

Having found reasonable the SEC's interpretation of the phrase "judicial or administrative action," we briefly address the interlocking statutory requirement that, to support a whistleblower award under the Program, such an action have been "brought by the Commission under the securities laws." 15 U.S.C. § 78u-6(a)(1). SEC regulations do not further interpret this requirement, and Hong offers little analysis of the language, although it was pivotal to the Commission's ruling: he seems to accept that the sanction on which an award is based must have been "brought by the Commission." We have little doubt, however, that in most circumstances the agency that "brought" the action is best understood to be the entity that filed or prosecuted the lawsuit, initiated the administrative proceeding, or entered into the settlement or other agreement that generated the recovery. *See Bring*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/bring ("to cause to exist or occur," such as to "institute" a "legal action"). The phrase "brought by the Commission" thus contemplates a leading enforcement role by the SEC and a sanction payment to the Commission.

As we touched on above, that a separate statutory provision speaks to awards that are based on "related actions" further suggests that Congress did not intend the phrase "judicial or administrative action brought by the Commission" to encompass

22

actions instituted by agencies to which the SEC merely provided assistance. 15 U.S.C. § 78u-6(a)(5); *see* 17 C.F.R. § 240.21F-3(b)(1) (related action can be "based upon information that either the whistleblower provided directly to [another agency] *or the Commission itself passed along . . . pursuant to the Commission's procedures for sharing information*" (emphasis added)). We therefore have no trouble concluding that for an action to be "brought by the Commission," the SEC must have led that action in some respect, as the Commission ruled. The Commission's decision to that effect was not arbitrary, capricious, or otherwise not in accordance with law.

## II.    Meaning of "Related Action"

Hong does not meaningfully challenge the SEC's position that the existence of a "covered judicial or administrative action" is a prerequisite to finding a "related action" that would qualify for an SEC whistleblower award. We conclude that, to the extent that the statutory definition of "related action" is ambiguous, the SEC regulations reasonably interpret the provision to require a predicate action brought by the SEC.

As set forth above, Section 21F provides:

> The term 'related action', when used with respect to any judicial or administrative action brought by the Commission under the securities laws, means any judicial or administrative action brought by [certain entities, including agencies] that is based upon the original information provided by a whistleblower . . . that led to the successful enforcement of the Commission action.

15 U.S.C. § 78u-6(a)(5). Although the definition does not state in so many words that an SEC action is a prerequisite to the existence of a "related action," an SEC action logically must exist for the non-SEC action to be "based upon the original information" that the "successful" Commission action relies on, as required by the definition's final clause. A "related action" depends on "successful enforcement of the Commission action"; this presupposes that there is a Commission action that could be "enforce[d]."

23

In line with this reading, the SEC's regulations reasonably interpret "related action" to include the prerequisite. One Commission regulation issued under Section 21F provides for award eligibility based on a "related action" if the claimant is "eligible to receive an award following a Commission action that results in monetary sanctions totaling more than $1,000,000." 17 C.F.R. § 240.21F-11(a). Another similarly requires that the original information underlying any related action have "led the Commission to obtain monetary sanctions totaling more than $1,000,000." *Id.* § 240.21F-3(b)(1). These regulations reasonably instruct that an award based on recovery in a related action is not available absent an action brought by the SEC. Hong provides no basis for concluding that these regulations reflect an unreasonable interpretation of the statutory definition of "related action."

Thus, we decide that an award-eligible "related action" must rest on a "covered judicial or administrative action."

### III. Neither the DOJ nor FHFA Settlement Is a "Covered Judicial or Administrative Action" or "Related Action"

Applying the above framework to Hong's case, we conclude that none of the purported agency "actions" that he identifies qualifies as a "judicial or administrative action" that was "brought by" the SEC and therefore that the SEC did not act arbitrarily or capriciously in denying Hong's claim.

First, we reject Hong's argument that the DOJ or FHFA settlements are themselves judicial or administrative "actions" that were "brought by" the SEC. Here, the SEC gave to DOJ and FHFA the two TCR forms that Hong submitted to it. When it did so, DOJ and FHFA were already well into investigating the Bank's practices regarding RMBS. Although, like DOJ and FHFA, the SEC was a member of the RMBS Group, the requirement that a covered action be "brought by" the SEC calls for some form of leadership by the SEC in the action itself. The settlement agreements reached

here make no mention of any involvement by the SEC; more consequentially, they do not purport to and do not in fact settle the claims of the SEC and other agencies against the Bank. *See* Stipulation of Dismissal, *Fed. Hous. Fin. Agency*, No. 11-cv-1383 (D. Conn. Aug. 3, 2017), ECF No. 741 (agreement defined as between FHFA and the Bank); FHFA-RBS Settlement Agreement at 4 (released claims do not include "any claims of any governmental entity or agency other than FHFA"); Jt. App'x at 762, 765–66 (DOJ-RBS agreement defined as between the Bank and United States acting through DOJ, and disclaiming authority to release claims of the SEC). Hong cites no authority for his bald assertion that "each member-agency does not act individually and lacks a functional separate identity when enforcing securities laws within the RMBS Group's mandate," Petitioner's Br. at 35, and the executive order convening the Financial Fraud Enforcement Task Force offers no basis to decide otherwise.

We need not decide whether in other circumstances an action might be considered jointly "brought by" multiple agencies, because Hong points to no basis for a claim that the SEC secured the DOJ and FHFA settlements. The settlement agreements are therefore not appropriately considered actions "brought by" the SEC and cannot support an award.

Second, because none of the activities undertaken by the SEC with respect to Hong's tip qualifies as a "covered judicial or administrative action," the other agencies' settlements cannot be award-eligible "related action[s]" to an SEC action. As described above, Hong describes the relevant SEC "actions" as "referrals, coordination, and evidence-sharing" with the other agencies of the RMBS Group.[14] Petitioner's Br. at 29.

---

[14] Hong also contends that he is unable to discern the exact activities undertaken by the SEC with respect to his tips and the investigations of RBS because the SEC has not provided him with the documents he requires. As explained below, Hong is not entitled to additional

But the SEC reasonably interpreted the term "judicial or administrative action" to refer only to "judicial or administrative proceeding[s]" or certain settlement agreements entered into by the SEC outside of a proceeding to address securities law violations. *See* 17 C.F.R. § 240.21F-4(d). The activities identified by Hong fall into neither category. Thus, they are not covered judicial or administrative actions.

## IV. The SEC Complied with This Court's Remand Order

Finally, Hong contends that the SEC failed to comply with our 2019 remand order and urges us to conclude that the agency did not address his arguments in good faith and did not "produce any records concerning [his] whistleblower information and the Commission's coordination with the FHFA and DOJ culminating in the DOJ Settlement or the FHFA Settlement," as he claims was required. Petitioner's Br. at 47. We are unpersuaded.

The final determination issued by the SEC shows that the agency indeed complied with the remand order. As noted above, we based our remand order "on the SEC's representation that it will, in good faith, proceed to issuance of preliminary and final determinations on Petitioner's application and address his arguments regarding the record and its rejection of his application." Motion Order, *Hong*, No. 19-3886 (2d Cir. May 12, 2020), ECF No. 92. In its final determination, the SEC considered Hong's arguments regarding the record but rejected them based on its application of the relevant law and regulations. The Commission concluded that the Office complied with agency regulations by (a) identifying the materials that formed the basis for an award determination and (b) providing such materials to Hong upon his request. It reasonably found that Hong was not entitled to more general discovery, explaining that the

discovery under the relevant regulations, and the information he seeks would be irrelevant to whether the SEC brought an "action" as defined by regulation.

26

materials Hong sought to have the agency consider "may be relevant to the underlying investigations, referrals, and settlements by" FHFA and DOJ, but "are not relevant to the basis for the determination with respect to [Hong's] award application." Sp. App'x at 10. Hong may disagree with the SEC's conclusion, but its decision leaves no room for reasonable dispute as to whether the agency fully considered Hong's arguments regarding the record that underlay its denial of his award claim.

We see no error in the SEC's decision. SEC regulations do not entitle Hong to "all records pertaining to the actions [the SEC] took upon receipt of Petitioner's whistleblower [tip] in lieu of commencing a judicial or administrative proceeding," Petitioner's Reply Br. at 16, unless such records fall within the categories of documents the agency relies upon in making its award determination. *See* 17 C.F.R. §§ 240.21F-10(e)(1)(i) (applicant may request materials that formed the basis of the preliminary determination), 240.21F-12(a) (listing six categories of materials that the SEC may rely upon to make an award determination). An applicant is not entitled to "any materials (including any pre-decisional or internal deliberative process materials that are prepared exclusively to assist the Commission in deciding the claim) other than those listed" in the relevant regulations. 17 C.F.R. § 240.21F-12(b); *see also Kilgour*, 942 F.3d at 124 (rejecting petitioner's argument that the SEC violated his due process rights by refusing to turn over certain documents, because they were "not included within the materials that [petitioner] is entitled to review under Rule 21F-12(a)"); *Doe v. Sec. & Exch. Comm'n*, 846 F. App'x 1, 5 (D.C. Cir. 2021) (concluding that whistleblower was not "entitled to all the information the Commission used in reaching the settlements" beyond those materials specified in Rule 21F-12(a)). Hong does not dispute that he received the materials delineated in Rule 21F-12(a), and he identifies no regulatory or other legal basis for his request for additional documents.

Moreover, in light of our construction of the statute and as the SEC correctly ruled, production of the records that Hong requested would have no effect on his entitlement to a whistleblower award. As explained above, the SEC has interpreted the term "judicial or administrative action" to mean "a single captioned judicial or administrative proceeding" as well as limited types of settlement and non-prosecution agreements. 17 C.F.R. § 240.21F-4(d). An SEC declarant averred that the SEC took no such action with respect to Hong's tip, *see* Jt. App'x at 47, and Hong does not go so far as to speculate that the SEC is concealing a judicial or administrative proceeding or its own settlement agreement with the Bank arising from the information in Hong's tip, nor does the record provide any basis for doing so. Ultimately, the materials Hong requests would be relevant only if we accept his arguments in favor of an all-embracing construction of the term "judicial or administrative action"—one that would include the most trivial information-sharing activities. For the reasons set out above, we find no error in the agency's rejection of that construction.

We therefore conclude that the SEC did not fail to comply with the remand order or wrongfully deny Hong access to additional documents related to its investigation of the Bank.

**V.      Further Observations**

As set forth above, we identify no error in the SEC's interpretation of Section 21F nor in its finding that, despite his contributions to recoveries obtained from the Bank by other components of the United States government, Hong is ineligible for a whistleblower award from the SEC. The agency's ruling rests on a reasonable construction of the statute and its own reasonable regulations issued under the statute. We are mindful that this decision may strike some as inconsistent with the principal statutory goal of the Program—namely, Congress's desire to incentivize and reward whistleblowers who may risk their reputations and careers to help hold financial

28

institutions responsible for unlawful behavior. But it is not our role to rewrite the limitations on eligibility set forth in the Exchange Act, nor to override the SEC's reasonable interpretations of that statute, in order to ensure that this goal is satisfied in every instance.

Other considerations, too, assure us that this outcome is consistent with the general statutory framework and purpose of the program. First, the Exchange Act provides that whistleblower awards be paid from the Commission's Investor Protection Fund, which is generally funded by monetary sanctions or civil penalties obtained *by the SEC*. *See* 15 U.S.C. § 78u–6(a)(2), (b)(2), (g)(3). Hong points to no basis for believing that recoveries obtained in settlements by DOJ and FHFA are accessible by the SEC to pay an award. We are aware of no reason to believe that the mere existence of the Financial Fraud Enforcement Task Force and its RMBS Group was intended to override the well-established boundaries between agency finances or that Congress intended such a result.[15] Finally, despite Hong's bald claims of bad faith by the SEC, the record provides no basis for believing that individual officials involved denied his claim to avoid having to pay Hong a whistleblower award. Hong cites to no action of the SEC that could reasonably be so construed. To the contrary: the agency reasonably decided that the law did not permit it to pay an award.

---

[15] Although the parties do not address the availability of whistleblower awards through other agencies, we note that DOJ has its own provisions designed to reward individuals for sharing helpful information regarding violations of the Financial Institutions Reform, Recovery, and Enforcement Act—which was the basis for DOJ's settlement here—albeit with significant differences to the SEC's whistleblower program. *See* 12 U.S.C. §§ 4201, 4205 (providing that the Attorney General must pay a percentage-based award to an individual who provided a declaration to DOJ that led to a judgment or settlement pursuant to which the United States acquires funds or assets). Hong may or may not be eligible for this type of award or other non-SEC monetary award programs, but the existence of other such programs makes clear that the SEC's was not contemplated to be a blanket mechanism for rewarding whistleblowers without regard to which agency acts on the information provided.

**CONCLUSION**

For the reasons set forth above, the petition for review is **DENIED**. The motion of the United States to dismiss is **DENIED** as moot.