# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2021

Lyle W. Cayce
Clerk

No. 20-50543

Luis Tejero,

*Plaintiff—Appellant*,

*versus*

Portfolio Recovery Associates, L.L.C.; Western Surety
Company,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-767

Before Higginbotham, Costa, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

The question presented is whether a private settlement constitutes a "successful action to enforce . . . liability" under the fee-shifting provision of the Fair Debt Collection Practices Act ("FDCPA"). It does not. We therefore affirm the district court's denial of attorney's fees.

I.

We recounted the facts in detail in our previous decision in this case. *See Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 456–57 (5th Cir.

2020) ("*Tejero I*"). Here we restate only those facts that are relevant to this appeal.

Luis Tejero sued Portfolio Recovery Associates under the FDCPA and parallel provisions of Texas state law for unlawful debt-collection practices. On cross-motions for summary judgment, the district court identified triable issues of fact and set the case for trial. *Ibid.* Before trial, the parties reached a settlement. *Id.* at 457. In the settlement, Portfolio Recovery disclaimed any liability—but it nonetheless agreed to pay Tejero $1,000 in damages and to forgive his underlying debt of approximately $2,100. *Ibid.* When the parties notified the district court of the settlement, however, the district court reported Tejero's lawyers to the disciplinary committee of the Western District of Texas, sanctioned them, and ordered thousands of dollars in costs and fees against Tejero. *Ibid.* The district court premised this extraordinary discipline on its conclusion that Tejero brought the case in bad faith—notwithstanding the fact that his claims were apparently meritorious enough to warrant a trial. *Ibid.*

We reversed for abuse of discretion. *Id.* at 458–61. We then remanded so the district court could determine in the first instance whether Tejero's favorable settlement entitled him to attorney's fees under the FDCPA. *Id.* at 462–63. The district court said no. Tejero again timely appealed.

## II.

The only question presented here is whether the district court committed reversible error in refusing Tejero's fee application under the FDCPA. We review the district court's denial of "attorney['s] fees for abuse of discretion, reviewing factual findings for clear error and legal conclusions *de novo.*" *LifeCare Mgmt. Servs. L.L.C. v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 846 (5th Cir. 2013).

No. 20-50543

A.

As a general matter in the United States, "[e]ach litigant pays his own attorney's fees, win or lose." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010). This background principle, known as the "American Rule," can be altered or amended by statute or contract. *Ibid.* In creating exceptions to the American Rule, Congress employs varying statutory language. Some statutes permit an award where "appropriate," *see, e.g.*, 42 U.S.C. § 7607(f), or in the "discretion" of the district court, *see, e.g.*, 15 U.S.C. § 77k(e). Other statutes allow the district court to award attorney's fees to the "prevailing party," *see, e.g.*, 42 U.S.C. § 1988(b), or to the litigant who brings a "successful action," *see, e.g.*, 12 U.S.C. § 3417(a)(4).

Tejero's request for attorney's fees is premised on the FDCPA, which authorizes fee shifting in a successful action. Its statutory text provides:

> [A]ny debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of—
>
> . . . .
>
> (3) in the case of any *successful action to enforce the foregoing liability*, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a)(3) (emphasis added).

The first key word is "successful." As a matter of common usage, "successful" means obtaining a "favorable outcome." *Successful*, AMERICAN HERITAGE DICTIONARY 1740 (5th ed. 2011). And "outcome" means an "end result"—it connotes finality. *Id.* at 1251. Perhaps if read in isolation, the word "successful" could extend to cover a private settlement that awards a litigant a favorable end result.

3

No. 20-50543

But the word "successful" does not stand alone in the statute; instead, it modifies the word "action." Action, in turn, means an "action at law" or a "lawsuit"—that is, "an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right." *Action*, BLACK'S LAW DICTIONARY 32–33 (9th ed. 2009) (quotation omitted). The word connotes a formal adjudication or "a judicial proceeding, which . . . will result in a judgment." *Id.* at 32 (quotation omitted); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 619 (2001) (Scalia, J., concurring) ("[F]ee-shifting statutes require that there be an 'action' . . . which in legal parlance (though not in more general usage) means a lawsuit."(emphasis omitted)). The phrase "successful action" thus requires a favorable end or result *from a lawsuit*—not merely success *in vacuo*.

Next, consider the infinitive phrase "to enforce the foregoing liability." An infinitive phrase expresses purpose. *See* THE CHICAGO MANUAL OF STYLE ¶ 5.107 (17th ed. 2017). Here, "to enforce" expresses the purpose of the "successful action." Thus, the action must succeed in its purpose of enforcing FDCPA liability. And like the word "action," the word "enforce" connotes a formal command or decree. *See Enforcement*, BLACK'S LAW DICTIONARY 608 ("The act or process of compelling compliance with a law, mandate, command, decree or agreement."). "Liability" means "[t]he quality or state of being legally obligated or accountable." *Liability*, BLACK'S LAW DICTIONARY 997.

Putting this all together, a "successful action to enforce the foregoing liability" means a lawsuit that generates a favorable end result compelling accountability and legal compliance with a formal command or decree under the FDCPA. Tejero won no such relief because he settled before his lawsuit reached any end result, let alone a favorable one. And by settling, Portfolio Recovery avoided a formal legal command or decree from Tejero's lawsuit.

4

No. 20-50543

Tejero's alternative interpretation requires rewriting the FDCPA's fee-shifting provision. In Tejero's telling, his "action" was "successful" because he settled for $1,000, which are the statutory damages allowed by the FDCPA. *See* 15 U.S.C. § 1692k(a)(2)(A). That might mean that *Tejero* was "successful," but it does not mean that his "*action*" was "successful." Nor does it mean that Tejero used his "*action*" "to enforce the foregoing [FDCPA] liability." *Id.* § 1692k(a)(3). Rather, he used a settlement agreement. And that settlement agreement did not "enforce" FDCPA "liability" because it did not compel Portfolio Recovery to do anything. Portfolio Recovery voluntarily[*] settled outside of the action; it refused to admit liability for anything; and in the process, it avoided any judicial mandate of any kind. Thus, to embrace Tejero's position, we'd have to rewrite Congress's statute to authorize fee-shifting "in the case of any successful <u>plaintiff</u> ~~action to enforce the foregoing liability~~." This we cannot do. *See Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019) (noting we must give effect to the words Congress used); Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) (same).

## B.

Nor are we persuaded that we should apply the catalyst theory to the FDCPA's fee-shifting provision. The catalyst theory posits that a plaintiff succeeds "if it achieves the desired result because the lawsuit brought about

---

[*] As we explained in *Tejero I*, it is unclear that the settlement in this case was purely voluntary because prior to summary judgment, the district court ordered the parties to exchange settlement offers and then sanctioned Tejero for failing to do so. *See* 955 F.3d at 459 ("We take this opportunity to reiterate the rule that has (or at least should have) applied in our Circuit for the last twenty-five years: If a party is forced to make a settlement offer because of the threat of sanctions, and the offer is accepted, a settlement has been achieved through coercion. Such a result cannot be tolerated." (quotation omitted)). But neither side has asked us (or the district court) to set aside the settlement as involuntary.

a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 601. That is, the lawsuit itself might not have succeeded—but it incentivized the defendant to give the plaintiff something. A win's a win, right?

Not here. In *Buckhannon*, the Supreme Court held that the catalyst theory cannot justify fee shifting under "prevailing party" statutes. *See* 532 U.S. at 601 (quoting the Fair Housing Amendments Act, 42 U.S.C § 3613(c)(2)). To qualify as a "prevailing party," the Court held that a litigant must obtain some sort of judicially sanctioned relief that materially alters the relationship between the parties. *Id.* at 604–05. Private settlements lacking "judicial approval and oversight" therefore fall outside the scope of the statute. *Id.* at 604 n.7. *Buckhannon* says that relief bearing the necessary "judicial *imprimatur*" to qualify a litigant as a prevailing party includes a judgment on the merits or a judicially sanctioned consent decree. *Id.* at 604–05.

After *Buckhannon*, our court applied the same rationale to other "prevailing party" statutes, like 42 U.S.C. § 1988. We have explained that a plaintiff must "obtain actual relief, such as an enforceable judgment or a consent decree" that "materially alters the legal relationship between the parties" and "modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment." *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006) (quotation omitted). Private settlements without judicial endorsement don't count. *Davis v. Abbott*, 781 F.3d 207, 214 (5th Cir. 2015). Nor do "purely technical or *de minimis*" victories—even when they carry judicial *imprimaturs*. *Jenevein v. Willing*, 605 F.3d 268, 271 (5th Cir. 2010) (quotation omitted).

The question therefore is whether the catalyst theory should apply to "successful action[s]" under 15 U.S.C. § 1692k(a)(3) notwithstanding its

inapplicability to "prevailing party" statutes. We think not. That's for two reasons.

First the text. It's true that the texts in the two provisions are different. But they're not meaningfully different. Black's entry for "prevailing party" lists "successful party" as a synonymous phrase carrying similar legal salience. *Prevailing Party*, BLACK'S LAW DICTIONARY 1232. And as we explained in our textual analysis above, 15 U.S.C. § 1692k(a)(3)—like the "prevailing party" statute in *Buckhannon*—requires a formal lawsuit, success in that lawsuit, and some form of judicial relief (as opposed to private relief) that enforces the winner's rights.

Second the precedent. The Supreme Court has been clear that similar fee-shifting statutes must be interpreted consistently. In *Buckhannon*, for example, the Supreme Court held that various "prevailing party" provisions found throughout the U.S. Code are "nearly identical" and must bear a common meaning. 532 U.S. at 603 n.4; *see also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 691 (1983) (explaining that "similar attorney's fee provisions should be interpreted *pari passu*"). And the Court has not distinguished fee-shifting provisions that require a "prevailing party" from those that require a "successful action." To the contrary, the Court discussed those phrases interchangeably in *Marx v. General Revenue Corp.*, 568 U.S. 371, 385–86 (2013). And in *Buckhannon*, the Court cited a compendium of 120 attorney's fee statutes—including both "prevailing party" and "successful action" provisions—without suggesting any difference between them. *See* 532 U.S. at 603. Moreover, the Court has described a "prevailing party" under § 1988 as one who "filed a successful action," *Kay v. Ehrlel*, 499 U.S. 432, 434 (1991), or as "one who has succeeded on any significant claim," *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989).

Prior to *Buckhannon*, we held that a favorable settlement could merit the award of attorney's fees under a "successful action" provision. *See Gram v. Bank of La.*, 691 F.2d 728, 729–30 (5th Cir. 1982) (interpreting 15 U.S.C. § 1640(a)(3)). In *Gram*, we recognized that "prevailing party" and "successful action" should be interpreted interchangeably. *Id.* at 730. And because pre-*Buckhannon* Supreme Court precedent held that a "prevailing party" included a litigant who achieved a meaningful settlement, we reasoned that a "successful action" provision must encompass favorable settlements too. *See id.* at 729–30 ("It is inconceivable that Congress intended that we give the two statutes opposite constructions."). But *Buckhannon* overruled all of this. *See* 532 U.S. at 603 & n.4. Therefore, we follow *Buckhannon* not *Gram*. *See Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) ("Three judge panels . . . abide by a prior Fifth Circuit decision until the decision is overruled, expressly or implicitly, by either the United States Supreme Court or by the Fifth Circuit sitting en banc." (quotation omitted)).

Recent circuit precedent is in accord. In *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 770 n.1 (5th Cir. 2020), we described attorney's fees under the "successful action" provision of 15 U.S.C. § 1692k(a)(3) as a benefit awarded to "prevailing parties." The Fourth Circuit has explained that "there is little reason to suppose that a successful action is anything more or less than an action brought by a prevailing party." *Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 186 (4th Cir. 2007) (quotation omitted). In considering fee shifting under the Fair Credit Reporting Act ("FCRA"), which is the "sister of the FDCPA," the Seventh Circuit could not "find anything in the text, structure, or legislative history of the Act to suggest that its [successful-action] attorney['s] fee provision has a different meaning from the [prevailing-party] provision at issue in *Buckhannon*." *Crabill v. Trans Union L.L.C.*, 259 F.3d 662, 667 (7th Cir. 2001); *see also Dechert v. Cadle Co.*, 441

F.3d 474, 475 (7th Cir. 2006) (explaining that "a 'successful action' is . . . one in which the plaintiff was a prevailing party"). And the Eleventh Circuit relied on *Crabill* to equate a "successful action" under the FCRA with a "prevailing party" under other fee-shifting statutes. *Nagel v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002).

At most, Tejero's FDCPA suit was the catalyst that spurred Portfolio Recovery to settle. The catalyst theory does not make Tejero's action a successful one under 15 U.S.C. § 1692k(a)(3). Therefore, Tejero is not entitled to fees.

AFFIRMED.