# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 23-60216

———————————

United States Court of Appeals
Fifth Circuit

**FILED**
August 30, 2024

Lyle W. Cayce
Clerk

John M. Barr; John McPherson,

*Petitioners*,

*versus*

Securities and Exchange Commission,

*Respondent*.

———————————————————

Petition of Review of an Order from the
Securities and Exchange Commission
Agency No. 2023-42

———————————————————

Before Smith, Engelhardt, and Ramirez, *Circuit Judges*.

Irma Carrillo Ramirez, *Circuit Judge*:

Two whistleblowers challenge the Securities and Exchange Commission's calculation of award amounts under the Dodd–Frank Wall Street Reform and Consumer Protection Act. The petitions for review are DENIED.

I

A

This case concerns the extensive securities fraud perpetrated from 1999 to 2013 by Life Partners Holdings, Inc. (Life Partners). *See SEC v. Life*

No. 23-60216

*Partners Holdings, Inc.*, 854 F.3d 765, 773 (5th Cir. 2017). Because this Court has previously considered the details of the fraudulent scheme, *see, e.g.*, *id.* at 772–74; *Jacobs v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 112–14 (5th Cir. 2019), only immediately relevant facts are recounted here.

In 2012, the Securities and Exchange Commission (the SEC) "filed a civil action in federal district court charging [Life Partners] and three of its officers with violations of the anti-fraud provisions of the federal securities laws." In late 2014, following a jury trial, the district court entered final judgment against Life Partners, in which it was ordered to pay $38.7 million in disgorgement and civil penalties. *See SEC v. Life Partners Holdings, Inc.*, 71 F. Supp. 3d 615, 626 (W.D. Tex. 2014).

Before the district court entered final judgment on January 16, 2015, the SEC filed an emergency motion to appoint a receiver "to maintain the status quo, prevent further dissipation of assets from [Life Partners], and protect [Life Partners's] investors and creditors." Four days after entry of final judgment, Life Partners filed a voluntary petition for Chapter 11 bankruptcy. The district court had not yet ruled on the SEC's motion to appoint a receiver when Life Partners filed for bankruptcy, and Life Partners openly admitted that it filed for bankruptcy "to 'avoid the appointment'" of a receiver. On February 5, 2015, the district court denied without prejudice the motion to appoint a receiver, finding, "[b]ased on [its] review of the motions and pleadings filed in [the bankruptcy] court," that "the SEC will be able to effectively seek from the [b]ankruptcy [c]ourt the relief sought . . . in the receivership motion."

In its capacity as an unsecured judgment creditor, the SEC filed a motion requesting that the bankruptcy court appoint a Chapter 11 trustee. The U.S. Trustee filed a similar motion. The bankruptcy court granted the SEC's motion, finding that Life Partners's gross mismanagement

2

constituted cause for appointment of a trustee and the appointment would be in the best interests of Life Partners's creditors and investors.

In June 2016, the Chapter 11 trustee proposed a plan that was ultimately confirmed. Among other things, the plan proposed the creation of a "'Creditors' Trust,' whose beneficiaries generally comprised unsecured creditors." The plan listed the SEC's claim for the enforcement-action judgment as "its own creditor class," "allocated a Creditor's Trust interest" to the SEC for the judgment's full amount, and "estimated the corresponding recovery as 'Unknown.'" As part of the plan, the SEC "agreed to reallocate any distributions with respect to its Creditors' Trust interest to . . . the life-settlement investors . . . in return for [Life Partners's] agreement to voluntarily dismiss its appeal then pending" before this Court. *See* Order, *SEC v. Life Partners Holdings, Inc.*, No. 14-51353 (5th Cir. Dec. 22, 2016). The bankruptcy court confirmed the plan in November 2016. Notably, "[u]ndisputed evidence in the administrative record reflects that, as of November 2020, there had been no collections or distributions with respect to the [SEC]'s Creditors' Trust interest."

B

On April 1, 2015, the SEC posted a Notice of Covered Action, inviting individuals to apply for whistleblower awards in connection with the Life Partners enforcement action. John Barr and John McPherson (Petitioners) timely submitted their respective applications.

On September 28, 2020, the SEC's Claims Review Staff (CRS) issued Preliminary Determinations, advising Petitioners of the intent to recommend that Barr be denied an award and that McPherson be granted an award of "23% of the monetary sanctions collected, or to be collected." The

No. 23-60216

Preliminary Determination sent to McPherson[1] explained that: (1) the SEC "shall pay an award to a whistleblower who provides original information that leads to the successful enforcement of the covered judicial or administrative action, or related action," (2) "[a] bankruptcy proceeding is neither brought by the [SEC] nor does it arise under the securities laws," (3) "a bankruptcy proceeding is not a related action, which must be 'brought by' a qualifying entity 'based on' the same original information that led to the successful enforcement of the covered action," and (4) the bankruptcy case "was not brought by a qualifying entity but rather was initiated by a voluntary petition under Chapter 11 filed by Life Partners."

C

Petitioners timely filed their respective written responses to the Preliminary Determinations. Barr primarily argued that CRS's determination to deny him an award was "based on inaccurate and incomplete information." After pointing out alleged factual inaccuracies in a declaration CRS relied on and listing out his contributions to the SEC's work relating to Life Partners, Barr urged reconsideration and for the SEC to grant him an award. McPherson advanced two main arguments: (1) the whistleblower-award calculation should be based on what the SEC is "able to collect," and (2) his whistleblower efforts warranted exercise of the SEC's statutorily delegated discretion to pay him a larger award.

On March 27, 2023, the SEC issued the final order regarding the whistleblower awards. It revised the ultimate recommendations in the Preliminary Determinations and granted Barr 5% and McPherson 20% of "the

---

[1] When the SEC transmits a document to a putative whistleblower, the SEC redacts information related to other whistleblowers. Here, this meant that CRS's explanation to McPherson was not provided to Barr.

amounts collected or to be collected in connection with" the SEC's enforcement action. The SEC disagreed with McPherson's objections. Among other legal conclusions, the SEC stated: (1) it did not "walk away from a collection of $38.7 million" by voluntarily subordinating its interest in the Creditors' Trust "because it would only have been able to collect a *de minimis* amount, and any such collections would have been dependent upon the [SEC] winning on appeal"; (2) the whistleblower-award calculation cannot be based on what the SEC "may have been able to but did not collect" because "the statutory maximum whistleblower award is based on the amount actually collected"; and (3) calculating the award "based on what the [SEC] hypothetically 'was able to collect,' but did not, would introduce uncertainty, inconsistency, and could delay the processing of award claims."

Barr petitioned this Court for review of the SEC's final order on April 24, 2023, and McPherson petitioned the United States Court of Appeals for the D.C. Circuit for review on April 25, 2023. The D.C. Circuit subsequently transferred McPherson's petition to this Court under 28 U.S.C. § 2112(a)(5), where it was consolidated with Barr's petition.

## II

Congress commits whistleblower-award determinations to the SEC's discretion. 15 U.S.C. § 78u-6(f). These determinations are reviewed "in accordance with section 706 of Title 5," *id.*, so they may be set aside if "found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,'" *Healthy Gulf v. U.S. Army Corps of Eng'rs*, 81 F.4th 510, 520 (5th Cir. 2023) (quoting 5 U.S.C. § 706(2)(A)).

An agency order is "arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so

implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 933 (5th Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). But this review is "neither sweeping nor intrusive. Instead, we 'ask whether the agency considered the relevant facts and articulated a satisfactory explanation for its decision; we cannot substitute our judgment for the agency's.'" *Fort Bend County v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 194 (5th Cir. 2023) (quoting *Amin v. Mayorkas*, 24 F.4th 383, 393 (5th Cir. 2022)). Pure questions of law are reviewed *de novo*. *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010) (quoting *Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004)); *see Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). Agency decisions are "presumptively valid; the [petitioner] bears the burden of showing otherwise." *Tex. Tech Physicians Assocs. v. U.S. Dep't of Health & Hum. Servs.*, 917 F.3d 837, 844 (5th Cir. 2019).

## III

### A

In the Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010), Congress "established 'a new, robust whistleblower program designed to motivate people who know of securities law violations to tell the SEC.'" *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 155 (2018) (quoting S. REP. NO. 111-176, at 38 (2010)). The program's statutory framework is located in 15 U.S.C. § 78u-6.

The statute outlines the circumstances in which the SEC must pay out whistleblower awards:

> In any covered judicial or administrative action, or related action, the [SEC], under regulations prescribed by the [SEC] and subject to subsection (c), shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original

information to the [SEC] that led to the successful enforcement of the covered judicial or administrative action, or related action, in an aggregate amount equal to—

> (A) not less than 10 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions; and

> (B) not more than 30 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions.

*Id.* § 78u-6(b)(1)(A)–(B).

The SEC is required to pay a whistleblower award in a "covered judicial or administrative action, or related action." *See id.* § 78u-6(b)(1). "[C]overed judicial or administrative action" and "related action" are defined terms. A covered judicial or administrative action refers to "any judicial or administrative action brought by the [SEC] under the securities laws that results in monetary sanctions exceeding $1,000,000." *Id.* § 78u-6(a)(1). A related action, "when used with respect to any judicial or administrative action brought by the [SEC] under the securities laws," refers to "any judicial or administrative action brought by [the Attorney General of the United States, an appropriate regulatory authority, a self-regulatory organization, or a State attorney general in connection with any criminal investigation] that is based upon the original information provided by a whistleblower pursuant to subsection (a) that led to the successful enforcement of the [SEC] action." *Id.* § 78u-6(a)(5); *see id.* § 78u-6(h)(2)(D)(i)(I)–(IV) (identifying the entities that may bring a related action). Whistleblowers are only entitled to awards under § 78u-6(b)(1) resulting from these qualifying actions.

B

The SEC contends Petitioners forfeited their argument that the SEC's actions in the bankruptcy case initiated a new "covered" action. Petitioners disagree.

Arguments are forfeited if raised "for the first time on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). An exception to this rule is that "an issue might be addressed for the first time on appeal if 'it is a purely legal matter and failure to consider the issue will result in a miscarriage of justice.'" *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024) (quoting *Rollins*, 8 F.4th at 398). While there is "no certain answer" as to when this exception should apply, *Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450, 453 (5th Cir. 2008), we must identify a "principled basis" to invoke it, *Rollins*, 8 F.4th at 398.

As noted above, when the SEC transmitted its Preliminary Determination to Barr, the document was redacted in great part, revealing information relevant only to Barr's award application. The SEC's explanation as to why it would recommend denying Barr an award rested on a single basis—that the information Barr provided "did not lead to the successful enforcement" of the SEC's enforcement action. Unlike with the Preliminary Determination McPherson received, the materials the SEC sent to Barr provided no indication of the SEC's interpretation of law now at issue before us.

The argument the SEC claims is forfeited is a purely legal one, and Barr had no notice or opportunity to contest the SEC's argument in the agency proceedings. *See Bunker v. Dow Chem. Co.*, --- F.4th ----, No. 24-20046, 2024 WL 3680804, at *4 n.3 (5th Cir. Aug. 7, 2024) ("Our decision not to address Bunker's newly raised arguments does not result in a miscarriage of justice. Bunker had every opportunity to present these arguments below."). We find that a miscarriage of justice would result if we

did not consider this purely legal argument since Barr was unaware of the SEC's legal position and had no opportunity to challenge it in the agency proceedings.[2]

C

Petitioners contend the bankruptcy case is a "covered judicial or administrative action" because, among other things, it is an action the SEC brought. They also contend the bankruptcy case is a "related action" because, among other things, it is an action the SEC or the Attorney General[3] brought. The SEC disagrees.

1

The statutory provisions defining qualifying actions are not identical, but they do share a phrase—"action brought." *See* 15 U.S.C. § 78u-6(a)(1), (5). The parties dispute its meaning.

When interpreting acts of Congress, courts seek the ordinary meaning of the enacted language. *Nat'l Ass'n of Priv. Fund Managers v. SEC*, 103 F.4th 1097, 1110 (5th Cir. 2024). The statutory text is invariably the first and primary consideration, *see Parada v. Garland*, 48 F.4th 374, 377 (5th Cir. 2022) (per curiam), and "the words of a statute" are normally given "their 'ordinary, contemporary, common meaning,' absent an indication Congress intended them to bear some different import," *Williams v. Taylor*, 529 U.S.

---

[2] Given our ultimate conclusion, we assume without deciding that McPherson did not forfeit this argument either.

[3] Sections 78u-6(a)(5) and 78u-6(h)(2)(D)(i)(I) establish that the Attorney General may bring a related action. "The Attorney General is the head of the Department of Justice." 28 U.S.C. § 503. The U.S. Trustees fall within the Department of Justice and operate under the Attorney General. *See id.* §§ 581, 586. Petitioners contend that under this structure, the U.S. Trustee qualifies as the Attorney General for purposes of 15 U.S.C. § 78u-6(a)(5).

420, 431 (2000) (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)). If a statute's text is clear and unambiguous, the interpretive inquiry ends. *Christiana Tr. v. Riddle*, 911 F.3d 799, 806 (5th Cir. 2018) (quoting *BMC Software, Inc. v. Comm'r*, 780 F.3d 669, 674 (5th Cir. 2015)).

Section 78u-6 does not define the word "action" or the phrase "action brought," so they take their "ordinary meaning." *See HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 388 (2021) (quoting *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)); *see also Belt v. EmCare, Inc.*, 444 F.3d 403, 412 (5th Cir. 2006) ("[W]e routinely consult dictionaries as a principal source of ordinary meaning . . . ."). An "action" is a "civil or criminal judicial proceeding." *Action*, Black's Law Dictionary (12th ed. 2024). Precedent confirms this understanding of "action." *See Brown v. Megg*, 857 F.3d 287, 290 (5th Cir. 2017) ("The ordinary meaning of 'action' is the entire lawsuit."); *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 993 F.3d 393, 396 (5th Cir. 2021) (synonymizing an "action" with "a 'lawsuit'"); *see also Brownback v. King*, 592 U.S. 209, 220 (2021) (Sotomayor, J., concurring) ("An 'action' refers to the whole of the lawsuit."); *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1236 (11th Cir. 2020) (Pryor, C.J., concurring) ("'[A]n action[]' . . . refers to 'the whole case.'" (citation omitted)).

As for "action brought," "[t]he dictionary defines to 'bring an action' as to 'sue' or 'institute legal proceedings.'" *Serna v. L. Off. of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 451 (5th Cir. 2013) (Smith, J., dissenting) (quoting *Bring an Action*, Black's Law Dictionary 219 (9th ed. 2009)); *see Dynamic CRM Recruiting Sols., L.L.C. v. UMA Educ., Inc.*, 31 F.4th 914, 919–23 (5th Cir. 2022) (conducting similar analysis of "brought before"); *see also Action*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/action (last visited August 30, 2024) ("the initiating of a proceeding in a court of justice by which one demands or enforces one's right"). And because "[t]o 'sue' is 'to institute a

lawsuit against (another party),' and to 'institute' is, in turn 'to begin or start; commence,'" *Serna*, 732 F.3d at 451 (Smith, J., dissenting) (original alterations and citations omitted); *see id.* ("[M]any federal statutes use 'file' and 'bring' interchangeably . . . ."), bringing an action refers to the act of filing a lawsuit or beginning legal proceedings. *See Goldenberg v. Murphy*, 108 U.S. 162, 163 (1883) ("A suit is brought when in law it is commenced, and we see no significance in the fact that in the legislation of congress on the subject of limitations the word 'commenced' is sometimes used, and at other times the word 'brought.' In this connection the two words evidently mean the same thing, and are used interchangeably."). Federal courts agree on this understanding. *See, e.g.*, *Hong v. SEC*, 41 F.4th 83, 95 (2d Cir. 2022) ("[C]ourts commonly refer to a party as having 'brought an action,' meaning that the party filed a lawsuit or formally initiated an administrative proceeding."); *United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 362 (7th Cir. 2010) ("One 'brings' an action by commencing suit."); *Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1359 (D.C. Cir. 1998) ("[T]he phrase 'bring a civil action' means to initiate a suit.").

2

Petitioners contend the SEC's motion to appoint a Chapter 11 trustee constituted bringing a qualifying action under § 78u-6(a).[4] They maintain that once the bankruptcy court granted the SEC's motion, the U.S. Trustee

---

[4] The question addressed here is narrow: is a motion to appoint a Chapter 11 trustee an "action brought" under § 78u-6(a)(1) or § 78u-6(a)(5)? Because the motion to appoint a Chapter 11 trustee is the only act Petitioners point to that may constitute bringing an action under § 78u-6(a), the answer to this question must be yes for Petitioners to prevail. Accordingly, we do not address whether other filings or procedures in the bankruptcy context qualify as an "action brought" in this statutory context.

appointed a Chapter 11 trustee, "who then initiated the full bankruptcy proceedings."

Key aspects of filing a motion to appoint a Chapter 11 trustee are incongruent with the plain meaning of bringing an action. First, bankruptcy cases are "commenced by the filing with the bankruptcy court of a petition," not the filing of a motion to appoint a trustee. 11 U.S.C. § 301(a); *see* FED. R. BANKR. P. 1002. Second, a motion to appoint a Chapter 11 trustee may not be brought until a bankruptcy case has already commenced. *See* 11 U.S.C. § 1104(a). Third, and more generally, a motion "is—and long has been—commonly understood to denote a request filed within the context of a *preexisting judicial proceeding*." *In re Wild*, 994 F.3d 1244, 1257 (11th Cir. 2021) (en banc) (emphasis added); *see, e.g.*, *Motion*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Frequently, *in the progress of litigation*, it is desired to have the court take some action which is incidental to the main proceeding . . . . Such action is invoked by an application usually less formal than the pleadings, and called a motion." (emphasis added) (quoting JOHN C. TOWNES, STUDIES IN AMERICAN ELEMENTARY LAW 621 (1911))); *see also Motion in Court*, A MODERN DICTIONARY OF THE ENGLISH LANGUAGE 446 (2d ed. 1911) ("[A]n application to a court . . . to have a rule or order made which is necessary to the *progress of an action*." (emphasis added)). Taken together, these points run contrary to the notion that filing a motion to appoint a Chapter 11 trustee constitutes bringing an action for purposes of § 78u-6(a).

Nevertheless, Petitioners argue that even though the bankruptcy case was not filed by a qualifying entity, bankruptcy actions are "an umbrella for a series of 'cases within a case,'" and filing the motion to appoint a trustee in Life Partners's bankruptcy case qualifies as an "action brought" by a qualifying entity.

No. 23-60216

Petitioners are generally correct that "bankruptcy case[s] embrace[] 'an aggregation of individual controversies.'"[5] *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37 (2020) (citation omitted). But they provide no authority to connect this general principle to the facts before us.

It is axiomatic that "statutory terms are generally interpreted in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006). As explained above, the ordinary meaning of "action brought" does not readily encompass a motion to appoint a Chapter 11 trustee, and Petitioners provide no authority explaining why the meaning of "action brought" should be understood as something other than its ordinary meaning. They merely point to the various ways in which the SEC and the U.S. Trustee were involved in the bankruptcy case. But it is not clear how or why these contentions demonstrate that the filing of the motion to appoint a Chapter 11 trustee constitutes bringing an action for purposes of § 78u-6. *See* 15 U.S.C. § 78u-6(a)(1), (5), (b)(1); *see also United Servs. Auto. Ass'n v. Perry*, 102 F.3d 144, 146 (5th Cir. 1996) ("A statute is ambiguous if it is susceptible of more than one *accepted* meaning." (emphasis added)).

Additionally, there are key problems with Petitioners' argument regarding the meaning of "action brought" and the focus on the word "proceeding." They appear to argue that "action" and "proceeding" are synonyms, and therefore any "proceeding" within a bankruptcy case is an "action" for § 78u-6's purposes. While that might be the case in some instances, "proceeding" ordinarily refers to aspects of an already

---

[5] This understanding of bankruptcy cases comes from the application of the final-judgment rule in the bankruptcy context. *See generally* 16 Charles Alan Wright et al., Federal Practice and Procedure § 3926.2 (3d ed.) (June 2024 Update). Petitioners do not provide authority supporting the notion that the way bankruptcy proceedings are treated for final-judgment purposes translates to the context of qualifying actions under § 78u-6(a).

13

commenced "action." *See Proceeding*, Black's Law Dictionary (12th ed. 2024) ("The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. . . . An act or step that is part of a larger action."). This is specifically the case in the bankruptcy context, in which a "proceeding" is "a particular dispute or matter arising within a pending case — as opposed to the case as a whole." *Id.* Moreover, Petitioners' argument that the "action brought" consists of all proceedings from the filing of the motion to appoint a trustee "up to and including the . . . court-ordered reorganization plan" demonstrates the extent to which they attempt to stretch the statutory language. This argument seemingly turns the ordinary meaning of "action brought" on its head. Petitioners do not provide authority explaining why the understanding they articulate is proper. *See Deal v. United States*, 508 U.S. 129, 131–32 (1993) ("[A]ll but one of the meanings [of a word] is ordinarily eliminated by context."), *superseded by statute on other grounds*, First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.

Given the lack of fit between the plain language of "action brought" and the filing of a motion to appoint a Chapter 11 trustee, we find that filing a motion to appoint a Chapter 11 trustee does not qualify as bringing a "covered judicial or administrative action" or a "related action." *See* 15 U.S.C. § 78u-6(a)(1), (5).

3

Petitioners assert two additional arguments.

First, in a variation on their main argument, Petitioners contend that the SEC's involvement in the bankruptcy case constitutes a "covered judicial or administrative action" because the bankruptcy case was simply a "continu[ation]" of the SEC's "single enforcement strategy" that began with the enforcement action in the United States District Court for the

Western District of Texas. But Petitioners do not grapple with the ordinary meaning of "action brought" in § 78u-6(a). Their "continuation" argument does not comport with the ordinary meaning of "bringing an action," *i.e.*, initiating a lawsuit or legal proceedings. *See Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000) (en banc) ("'[B]rought' and 'bring' refer to the filing or commencement of a lawsuit, not to its continuation."). Petitioners' reading would do away with the commencement aspect of "bringing an action." *See FCC v. AT&T Inc.*, 562 U.S. 397, 407 (2011) (declining to adopt a party's reading of a statutory term where the party did not provide a "sound reason in the statutory text or context to disregard" the term's "ordinary meaning"); *see also* 17 C.F.R. § 240.21F-4(d) ("An action generally means a *single captioned* judicial or administrative proceeding *brought by the* [*SEC*]." (emphasis added)).

Second, Petitioners argue that the SEC's interpretation of 15 U.S.C. § 78u-6 is contrary to the purpose of the whistleblower statute and will damage the design and efficacy of the whistleblower program. These contentions go to policy concerns underlying the statute, which are appropriate for Congress's consideration, not ours. *See BP P.L.C. v. Mayor of Balt.*, 141 S. Ct. 1532, 1542 (2021) ("'[E]ven the most formidable' policy arguments cannot 'overcome' a clear statutory directive." (quoting *Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012))). "Laws are the product of 'compromise,' and no law 'pursues its purposes at all costs.'" *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023) (brackets and ellipsis omitted) (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017)). While Petitioners' policy concerns are well-taken, courts "do not generally expect statutes to fulfill 100% of all of their goals." *Cyan, Inc. v. Beaver Cnty. Emps.' Ret. Fund*, 583 U.S. 416, 433 (2018). "[T]he best guide to what Congress intends" in a statute is "what Congress says in [the] statute's text," *United States v. Koutsostamatis*, 956 F.3d 301, 310 (5th Cir. 2020), and

No. 23-60216

"a statute's purpose may not override its plain language," *United States v. Rainey*, 757 F.3d 234, 245 (5th Cir. 2014). *See Richards v. United States*, 369 U.S. 1, 9 (1962) ("[L]egislative purpose is expressed by the ordinary meaning of the words used."). Because § 78u-6's text is plain and unambiguous, we must give effect to the text as enacted by Congress without considering statutory purpose. *See Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013).

\* \* \*

Because the motion to appoint a trustee in the bankruptcy case was not an "action brought by" a qualifying entity, it does not meet the definition of a "covered judicial or administrative action" under § 78u-6(a)(1) or a "related action" under § 78u-6(a)(5). In the absence of an action identified by the statute, § 78u-6(b)(1) does not require the SEC to pay whistleblower awards to Barr and McPherson predicated on the bankruptcy case.[6]

D

Seeking a larger award amount than the SEC originally allotted, McPherson requests that we "clarify the extent of the [SEC]'s exemptive authority" and remand for further consideration by the SEC. The authority McPherson refers to comes from 15 U.S.C. § 78mm(a)(1), which allows the SEC to "conditionally or unconditionally exempt any person, security, or transaction, or any class or classes of persons, securities, or transactions, from any provision or provisions of this chapter or of any rule or regulation thereunder, to the extent that such exemption is necessary or appropriate in

---

[6] Given this conclusion, Petitioners' remaining arguments on the merits, with the exception of the matter examined in Section III.D *infra*, need not be considered. *See PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("[I]f it is not necessary to decide more, it is necessary not to decide more . . . .").

the public interest, and is consistent with the protection of investors."
McPherson supports his request with two contentions: (1) there is no
limitation in § 78mm(a)(1)'s text proscribing the SEC's use of its exemptive
authority as to the award amount, and (2) the SEC has previously exempted
whistleblowers from pertinent statutory requirements.

First, the SEC's final order does not indicate any disagreement as to
§ 78mm(a)(1)'s meaning. The SEC stated:

> We have used this discretionary authority to exempt
> whistleblowers from certain of the program's rules under
> limited circumstances. However, the limitation on the amount
> of the award to be issued in connection with any Covered
> Action was set by statute, and we have never used our
> discretion under Section 36(a)(1) of the Exchange Act to
> exempt a whistleblower from a statutory requirement or to
> approve an award amount above the statutory limit. The text
> of the statute reflects a clear congressional design to grant
> awards of no more than 30 percent of the amounts collected.
> Congress established the same framework for awards to be paid
> to whistleblowers in cases brought by the Commodity Futures
> Trading Commission and under the Anti-Money Laundering
> Act. Given the clarity and consistency of the statutory design
> for whistleblower awards, the [SEC] does not believe it would
> be appropriate to use its exemptive authority to award an
> amount above the statutory limit even in cases such as this one,
> where a higher award amount might otherwise be warranted.

It did not take the position that it was statutorily precluded from exercising
its exemptive authority as to McPherson.

Second, though McPherson claims the SEC has previously exempted
whistleblowers from pertinent statutory requirements, he cites two
supporting examples—only one actually involved the use of the exemptive
authority, but there the SEC exempted the whistleblower from a regulatory,

not statutory, requirement. *See* Order Determining Whistleblower Award Claim, Release No. 72727, 2014 WL 3749705, at *1 (July 31, 2014) ("[W]e therefore believe it appropriate in the public interest and consistent with the protection of investors to waive the 'voluntary' requirement of *Rule 21F-4(a)* on the unique facts of this award claim and to make an award to Claimant." (emphasis added)).

To the extent McPherson's request is simply for the SEC to reconsider its exemptive-authority decision, McPherson must demonstrate that the SEC abused its discretion in declining to exempt McPherson from the statutory limits. *See* 5 U.S.C. § 706(2)(A). But merely disagreeing with the SEC's decision does not show that the agency abused its discretion.

## IV

The petitions for review are DENIED.